Opinion issued March 11, 2010









                    










In The
Court of Appeals
For The
First District of Texas




NO. 01–08–00247–CR
NO. 01–08–00248–CR




MIGUEL ANGEL GARCIA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause Nos. 1157987, 1121982




MEMORANDUM OPINION

          Under Texas Rule of Appellate Procedure 50, we withdraw our opinion and
judgment dated January 14, 2010, and substitute the following opinion and judgment
in their place. See Tex. R. App. P. 50.
          Following a joint trial on two indictments, a jury found appellant, Miguel
Angel Garcia, guilty of the offense of aggravated robbery. See Tex. Penal Code
Ann. §§ 29.02 (a) (2), 29.03 (a) (2) (Vernon 2003). Appellant pleaded “true” to the
felony enhancement, and the jury found the enhancement true. The jury assessed
punishment at 30 years’ confinement in cause number 1121982 and 20 years’
confinement in cause number 1157987, to run concurrently. The trial court entered
an affirmative finding on the use or exhibition of a deadly weapon.
          In cause number 1121982, appellant presents seven points of error. In his first
and second points, appellant contends that the trial court erred by admitting certain
hearsay testimony. In his third through fifth points, appellant contends that the trial
court erred by instructing the jury that it must unanimously agree to acquit appellant
of aggravated robbery before considering his guilt on the lesser-included offenses. 
In his sixth point, appellant contends that the trial court erred by overruling his
objection to the State’s references to punishment issues in its closing argument. In
his seventh point, appellant contends that the trial court erred by entering an
affirmative finding as to the use of a deadly weapon.
 
          In cause number 1157987, appellant presents ten points of error. In his first
and second points of error, appellant contends that the trial court erred by admitting
certain hearsay testimony. In his third and fourth points, appellant challenges the
legal and factual sufficiency of the evidence to support his conviction. In his fifth
through seventh points, appellant contends that the trial court erred by instructing the
jury that it must unanimously agree to acquit appellant of aggravated robbery before
considering his guilt on the lesser-included offenses. In his eighth point, appellant
contends that the trial court erred by overruling his objection to the State’s references
to punishment issues in its closing argument. In his ninth point, appellant contends
that the judgment, which reflects that he was assessed 30 years’ confinement in cause
number 1157987, must be reformed to match the jury’s verdict form and the oral
pronouncement of the trial court, which reflect that he was assessed 20 years’
confinement. In his tenth point, appellant contends that the trial court erred by
entering an affirmative finding as to the use of a deadly weapon.
          We reform the judgment of the trial court and affirm as reformed.
BackgroundShortly after midnight on December 10, 2006, the complainants, Alberto
Martinez and Patricia Serrano, were at the Tequila Sunrise Bar and had stepped
outside so that Patricia could remove her painful shoes. Patricia sat down on the
passenger seat of Alberto’s truck, which was parked near the front door of the club,
and Alberto stood in the open passenger-side doorway, helping Patricia. 
          Patricia testified that she heard a car stop quickly on the gravel nearby, but she
did not look up. Moments later, two Hispanic men appeared behind Alberto, one
holding a firearm and one holding a knife. Patricia noticed that one of the men was
clearly older than the other, but she could not remember which one held the gun and
which held the knife. The gun was black in color. Patricia testified that “they” said,
in Spanish, to “give them the wallet, give them the money.” Patricia also testified that
she heard, “Give me your wallet, give me your money, whatever you have.” 
          Patricia testified that she saw “them” take Alberto’s wallet and that they took
his truck keys. One of the men “pulled Alberto from the truck and pulled him down”
to the ground and “struck” Alberto. The other man held the gun in Patricia’s face. 
Patricia testified that she was afraid for her life. She then saw a police officer drive
into the parking lot, and the two men ran away in different directions.
          Officer C.M. Holloway of the Houston Police Department (“HPD”) was on
patrol in the area at the time of the incident. As he was driving by the club with his
window down, he heard an argument occurring in the parking lot. As he drove into
the parking lot, he saw two men beating another man, and a woman standing nearby,
looking down on what was happening. Officer Holloway testified that the men were
Hispanic and that one was clearly older than the other. Officer Holloway radioed for
backup, giving a description of the tattoos and clothing he saw on the older man. He
then turned on his overhead lights, and the two men ran away in different directions. 
Officer Holloway chased and caught the younger man, who was later identified as
Cipriano Roman. Officer Holloway placed him in custody and put him in the back
seat of the police car.
          Moments later, the older Hispanic man, later identified as appellant, appeared. 
He approached Officer Holloway and told him that he had just been “chasing the bad
guys” down the street. Appellant was breathing hard, nervous, and sweating
profusely. Appellant said that “two black” men had robbed a couple in the parking
lot and that he had chased after them. Officer Holloway recognized appellant as the
second man he had seen beating up Alberto. Appellant pointed as he spoke, and
Officer Holloway noticed that appellant’s knuckles were bloody, like he had been in
a fight. Officer Holloway took appellant into custody.
          Another HPD officer, also named C.M. Holloway, arrived at the scene to assist. 
Officer Holloway searched the area in which Roman was apprehended and recovered
a loaded firearm. At trial, Officer Holloway identified the weapon as a .45-caliber
Colt 911.
 
          HPD Investigator L. Lovelace interviewed Roman. Investigator Lovelace
testified that Roman said that, on the night of the incident, he and appellant, who is
his uncle, had been driving around and passed by the club. They saw two people
standing outside, and appellant said, “Hey, what do you think, C.J., let’s go get them.” 
They drove into the parking lot, and appellant got out of the car with a knife and
approached the people. Roman said that appellant began struggling with the man, so
Roman got out. Roman heard appellant tell “them” to give him money. Roman said
that he grabbed a pistol from the car, but the police came and he ran away. Roman
said that the gun belonged to appellant. 
          Investigator Lovelace conducted a videotaped interview of appellant, which
was admitted at trial. During the interview, appellant said that, on the night of the
incident, he and his nephew, whom he calls “C.J.,” were driving around and decided
to go to the club. The two men were in appellant’s wife’s car. Appellant drove into
the parking lot and spoke with a security guard, who told them they would have to
park across the street. Appellant saw a couple, Alberto and Patricia, at a truck parked
by the front door. Appellant asked them if they were about to leave, and the man got
angry. Roman got out and got into a fight with the man, so appellant grabbed the gun
and tried to knock the man down. 
 
          Alberto was transported by emergency medical personnel to Memorial
Hermann Hospital. His medical records were admitted into evidence. The records
reflect that Alberto was presented at the hospital as having been “hit in head and face
multiple times with butt of gun” and that he had lost consciousness. Alberto was
treated for “scalp and facial contusions/abrasions” and released later that day.
          The jury was instructed that it could find appellant guilty either as the primary
actor or as a party. The jury convicted appellant, in cause number 1121982, of the
aggravated robbery of Alberto and, in cause number 1157987, of the aggravated
robbery of Patricia.
Sufficiency of the Evidence
In his third and fourth points of error in cause number 1157987, appellant
challenges the legal and factual sufficiency of the evidence to support his conviction
for the aggravated robbery of Patricia.A.      Standard of Review
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).
“We may not re-evaluate the weight and credibility of the record evidence and
thereby substitute our judgment for that of the fact-finder.” Id. We give deference to
the responsibility of the factfinder to fairly resolve conflicts in testimony, to weigh
evidence, and to draw reasonable inferences from the facts. Id. “Our duty is to ensure
that the evidence presented actually supports a conclusion that the defendant
committed the crime that was charged.” Id.
          We begin our factual sufficiency review with the assumption that the evidence
is legally sufficient. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).
Evidence that is legally sufficient, however, can be deemed factually insufficient if
(1) the evidence supporting the conviction is “too weak” to support the factfinder’s
verdict or (2) considering conflicting evidence, the factfinder’s verdict is “against the
great weight and preponderance of the evidence.” Id. We consider all of the evidence
in a neutral light, as opposed to in a light most favorable to the verdict. Id. We
recognize that the factfinder is in the best position to evaluate the credibility of
witnesses, and we afford due deference to the factfinder’s determinations. Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). We may only find the
evidence factually insufficient when necessary to “prevent manifest injustice.” Laster,
275 S.W.3d at 518. In such case, we must explain why the evidence is too weak to
support the verdict or why the conflicting evidence greatly weighs against the verdict.
Id.
B.      The Law
          A person commits the offense of robbery if, in the course of committing theft
and with the intent to obtain or maintain control of the property, he (1) intentionally,
knowingly, or recklessly causes bodily injury to another or (2) intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Penal Code Ann. §§ 29.02(a)(2), 31.03 (Vernon 2003 & Supp. 2009). A
robbery is aggravated if, inter alia, the person uses or exhibits a deadly weapon. Id.
§ 29.03(a)(2). A firearm is, per se, a deadly weapon. Tex. Penal Code Ann.
§ 1.07(a)(17)(A) (Vernon Supp. 2009). 
          “A person is criminally responsible as a party to an offense if the offense is
committed by his conduct, by the conduct of another for which he is criminally
responsible, or by both.” Tex. Penal Code Ann. § 7.01 (Vernon 2003). A person
is criminally responsible for an offense committed by the conduct of another if, acting
with intent to promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense. Id.
§ 7.02(a)(2). In determining whether the accused acted as a party, we may consider
events occurring before, during, and after the commission of the offense and may rely
on actions of the defendant that show an understanding and a common design to
commit the prohibited act. Payne v. State, 194 S.W.3d 689, 694 (Tex.
App.—Houston [14th Dist.] 2006, pet. ref’d). Circumstantial evidence may be
sufficient to establish a defendant’s guilt as a party to an offense. Powell v. State, 194
S.W.3d 503, 506 (Tex. Crim. App. 2006).
C.      Legal Sufficiency
          The State presented evidence that appellant committed an aggravated robbery
of Patricia. See Tex. Penal Code Ann. § 29.03(a)(2). 
          The State presented appellant’s videotaped interview, during which he said that
he and Roman were at the club at the time of the incident, that they approached
Alberto and Patricia, and that there was a confrontation. The State also presented the
testimony of Investigator Lovelace, who said that Roman told him that he and
appellant were driving around and passed by the club. They saw two people standing
outside and appellant said, “Hey, what do you think, C.J., let’s go get them.” 
          Patricia testified that two Hispanic men, later identified as appellant and
Roman, approached her and Alberto. One of the men was holding a firearm and one
was holding a knife. Patricia testified that “they” said, in Spanish, to “give them the
wallet, give them the money.” Patricia also testified that one of them said, “Give me
your wallet, give me your money, whatever you have.” Patricia saw “them” take
Alberto’s wallet and reported that “they” took his truck keys. Investigator Lovelace
also testified that Roman said that he heard appellant tell “them” to give him money.
From this evidence, the jury could have reasonably concluded that appellant was in
the course of committing theft and that he acted with the intent to obtain or maintain
control of Patricia’s and Alberto’s property. See Tex. Penal Code Ann. § 31.03.
          Patricia also testified that one of the men “pulled Alberto from the truck and
pulled him down” to the ground and struck Alberto, while the other man held a gun
to Patricia’s face. Patricia testified that she feared imminent injury or death. Through
his videotaped interview, appellant admitted that he grabbed a gun and tried to knock
Alberto down. From this evidence, the jury could have reasonably concluded that
appellant intentionally or knowingly threatened or placed another in fear of imminent
bodily injury or death and appellant used or exhibited a deadly weapon. See Tex.
Penal Code Ann. §§ 1.07(a)(17)(A), 29.02(a)(2), 29.03(a)(2). 
          Officer Holloway’s testimony supported that of Patricia. Officer Holloway
testified that, as he drove into the parking lot of the club, he saw two men, later
identified as appellant and Roman, beating another man, later identified as Alberto,
and saw a woman, later identified as Patricia, standing nearby. Officer Holloway 
turned on his overhead lights, and the two men ran away in different directions. 
Officer Holloway chased and caught Roman. Moments later, appellant appeared and
Officer Holloway recognized him from his tattoos and clothing as the second man he
had seen beating up Alberto. Appellant was breathing hard, nervous, and sweating
profusely, and Officer Holloway noticed that appellant’s knuckles were bloody, like
he had been in a fight. A subsequent search of the area yielded a loaded firearm in
close proximity to where Roman had been apprehended. 
          Considering all the evidence in a light that supports the verdict, the jury could
have reasonably concluded that appellant committed an aggravated robbery of
Patricia and that he used or exhibited a deadly weapon, namely, a firearm. See Tex.
Penal Code Ann. §§ 1.07, 29.03(a)(2). Further, the jury was authorized to convict
appellant as the primary actor or as a party. See Tex. Penal Code Ann. §§ 7.01,
7.02. We hold that the evidence is legally sufficient to support appellant’s conviction
in cause number 1157987. See Williams, 235 S.W.3d at 750.
          Appellant contends that “[t]he evidence supports a conviction for aggravated
assault with a deadly weapon against Patricia Serrano, but it is legally insufficient to
support a conviction for aggravated robbery” because “[t]he only demand was for
property belonging to another person, Alberto Martinez” and that “[n]o one
demanded or tried to obtain any property belonging to Patricia Serrano.”
          The evidence shows the contrary. Patricia testified that appellant and Roman
approached her and Alberto, that one held a gun and the other held a knife, and that
“they” said, “Give me you wallet, give me your money, whatever you have.” From
this evidence, the jury could have reasonably concluded that appellant demanded
property from both Patricia and Alberto. Moreover, a specific verbal demand from
Patricia alone was not required. See Johnson v. State, 541 S.W.2d 185, 187 (Tex.
Crim. App. 1976) (explaining that “a specific verbal demand is not the talisman of an
intent to steal”; rather, intent may be inferred from conduct). Further, although
Patricia testified that nothing was stolen directly from her, a completed theft is not
required to support a conviction for aggravated robbery. See Tex. Penal Code Ann.
§ 29.01 (Vernon 2003) (defining that “in the course of committing theft” includes
attempt to commit theft); Autry v. State, 626 S.W.2d 758, 762 (Tex. Crim. App. 1982)
(stating that “actual commission of offense of theft is not a prerequisite to the
commission of the offense of robbery”).
D.      Factual Sufficiency
          As discussed above, the State presented appellant’s videotaped interview,
during which he admitted that he and Roman were at the club at the time of the
incident, that they approached Alberto and Patricia, and that there was a
confrontation. Investigator Lovelace testified that Roman said that he and appellant
were driving around and passed by the club when they saw two people standing
outside and appellant said, “Hey, what do you think, C.J., let’s go get them.” Patricia
testified that two Hispanic men, later identified as appellant and Roman, approached
her and Alberto; one of the men was holding a firearm; and “they” said, in Spanish,
to “give them the wallet, give them the money.” Patricia saw “them” take Alberto’s
wallet and said that “they” took his truck keys. Investigator Lovelace also testified
that Roman said that he heard appellant tell “them” to give him money.
          Patricia also testified that one of the men “pulled Alberto from the truck and
pulled him down” to the ground and struck Alberto, while the other man held a gun
to Patricia’s face. Patricia also testified that she feared imminent injury or death.
Appellant admitted that he had grabbed a gun from the car. 
          In conducting a factual sufficiency review, we must consider the most
important evidence that the appellant claims undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Here, appellant contends that
“[t]he only evidence to support a conviction for aggravated robbery was the testimony
of the complaining witness, Patricia Serrano, which shows that there was no attempt
to steal any property from her.” 
          Again, there is evidence to the contrary. Patricia testified that appellant and
Roman approached her and Alberto, that one held a gun and the other held a knife,
and that “they” said, “Give me you wallet, give me your money, whatever you have.” 
From this evidence, the jury could have reasonably concluded that appellant
demanded property from both Patricia and Alberto. See Johnson, 541 S.W.2d at 187. 
As the sole judge of the facts, the jury was free to believe all, some, or none of the
testimony offered. See Cain, 958 S.W.2d at 407 n.5; Jaggers v. State, 125 S.W.3d
661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d.). It is the within the
province of the jury to determine what weight to afford the evidence. See Marshall, 
210 S.W.3d at 625; Jaggers, 125 S.W.3d at 672. 
          After reviewing all of the evidence in a neutral light, we cannot conclude that
the evidence is so weak that the verdict is clearly wrong and manifestly unjust or that
the verdict is against the great weight and preponderance of the evidence. Laster, 275
S.W.3d at 518. We hold that the evidence is factually sufficient to support
appellant’s conviction. 
          Accordingly, we overrule appellant’s third and fourth points of error in cause
number 1157987.
Hearsay
          In his first and second points of error in both cause numbers, appellant
contends that the trial court erred by admitting, over his objection, certain hearsay
testimony by Officer Lovelace. 
A.      Standard of Review and Guiding Legal Principles
          We review a trial court’s ruling on the admissibility of testimony for an abuse
of discretion. Salazar v. State, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We
will uphold the trial court’s decision unless it lies outside the zone of reasonable
disagreement. Id. We give almost total deference to the trial court’s determination of
historical facts that are supported by the record, especially when those findings are
based on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).
          Hearsay is “a statement, other than one made by the declarant while testifying
at trial or hearing, offered in evidence to prove the truth of the matter asserted.” Tex.
R. Evid. 801(d). Hearsay statements are inadmissible except as provided by statute
or other rule. Tex. R. Evid. 802; see Tex. R. Evid. 803 (providing exceptions). An
extrajudicial statement that is offered for the purpose of showing what was said rather
than for proving the truth of the matter stated therein, does not constitute hearsay.
Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); Gonzales v. State, 190
S.W.3d 125, 133–34 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).
          The erroneous admission of a hearsay statement constitutes non-constitutional
error that is subject to a harm analysis. See Tex. R. App. P. 44.2(b); Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error must be
disregarded unless it affected a substantial right of the defendant. Tex. R. App. P.
44.2(b); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right
is affected when the error had a substantial and injurious effect in determining the
verdict. Johnson, 43 S.W.3d at 4. A conviction should not be overturned for such
error if this court, after examining the record as a whole, has fair assurance that the
error did not influence the trial court or had but a slight effect. See id.
B.      Analysis
          In his first point of error, appellant complains that the videotape “recorded
interview of appellant includes statements by Cipriano Roman which incriminated
appellant” and constituted inadmissible hearsay. In his second point of error,
appellant contends that Officer Lovelace’s testimony from his own recollection of his
interview of Roman constituted inadmissible hearsay. 
          Prior to trial, appellant sought to suppress any “Statements of the Defendant to
any law officer.” (Emphasis added.) At a hearing on the motion, the videotaped
interview of appellant was played. In the interview, Officer Lovelace told appellant
that Roman had said that the gun belonged to appellant, that it was in appellant’s car,
and that appellant had a knife. Appellant objected as follows, “As to the hearsay
statements contained with[in] the tape, Your Honor, in dealing with what the co-defendant told this officer. I would object to those statements coming in.” The State
argued that the statements constituted admissions by a party opponent. The trial court
ruled that the statements were admissible. 
          Later, at trial, in conjunction with the videotape being published to the jury,
appellant again objected, on the basis of hearsay, to the admission of Roman’s
statements incriminating appellant that came in through the videotaped interview of
appellant. The objection was overruled.
          A statement is not hearsay if it constitutes an admission by a party opponent,
that is, stated generally, if it is offered against a party and is the party’s own
statement, a statement of which the party has manifested an adoption of its truth, a
statement by a person authorized by the party to make a statement concerning the
subject, a statement by the party’s agent, or a statement by a co-conspirator of a party
during the course and in furtherance of the conspiracy. Tex. R. Evid. 801(e)(2). 
Here, the statements by Investigator Lovelace to appellant, made during the
videotaped interview, indicating that Roman had implicated appellant as having
owned the gun, having carried it in his car, and having held a knife during the
confrontation at issue, do not fall under any of the provisions of Rule 801(e)(2). The
statements are not admissions by a party opponent. Cf. Rodela v. State, 829 S.W.2d
845, 847–50 (Tex. App.—Houston [1st Dist] 1992, pet. ref’d) (holding that witness
could testify about statements made to him by police department investigator because
the statements were admissions by party-opponent and were thus not excluded by
hearsay rule). Hence, the trial court abused its discretion by admitting those portions
of the videotape.
 
          Having determined that error occurred, the next step is to assess whether harm
resulted. See Tex. R. App. P. 44.2(b); Johnson, 43 S.W.3d at 4. Here, the same facts
at issue were later placed before the jury through Investigator Lovelace’s testimony
concerning his own recollection of his interview with Roman. Investigator Lovelace
testified that Roman said that appellant suggested that they rob Alberto and Patricia;
that appellant got out of the car with a knife and approached them; that appellant
asked Alberto for money; and that the pistol belonged to appellant. The record does
not reflect that appellant objected to this testimony. 
          Hence, appellant was not harmed by the erroneous admission of hearsay
through the videotaped interview, because the same evidence came in during
subsequent testimony by Investigator Lovelace. See Tex. R. App. P.
44.2(b)(providing that non-constitutional error not affecting substantial right must be
disregarded); Johnson, 43 S.W.23d at 4 (stating that substantial right is affected when
error has substantial and injurious effect or influence in determining jury’s verdict);
Leday v. State, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998); Duncan v. State, 95
S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). 
          Further, because appellant failed to object during Officer Lovelace’s testimony
concerning his own recollection of the interview, appellant’s second point of error,
which concerns that testimony, was not preserved for our review. See Tex. R. App.
P. 33.1.
          Accordingly, we overrule appellant’s first and second points of error in cause
numbers 1157987 and 1121982.
Jury Instruction
          In his fifth through seventh points in cause number 1157987 and his third
through fifth points in cause number 1121982, appellant contends that the trial court
erred by instructing the jury that it must unanimously agree to acquit appellant of
aggravated robbery before considering his guilt on the lesser-included offenses. 
           A claim that there was error in the jury charge is reviewed using the procedure
set out in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The first
step is to determine whether there is error in the charge. Barrios v. State, 283 S.W.3d
348, 350 (Tex. Crim. App. 2009). If there is error and appellant objected to the error
at trial, reversal is required if the error “is calculated to injure the rights of the
defendant,” which we have defined to mean that there is “some harm.”  Id.
(explaining Almanza, 686 S.W.2d at 171). If not objected to, the error must be
“fundamental” and it requires reversal occurs only if it was so egregious and created
such harm that the defendant “has not had a fair and impartial trial.” Id.
          Here, in the jury charge, after the definition and application paragraphs
concerning the offense of aggravated robbery, the jury was instructed as follows:
Unless you so find from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the defendant of
aggravated robbery and next consider whether the defendant is guilty of
the lesser offense of aggravated assault.

          After the definition and application paragraphs concerning the offense of
aggravated assault, the jury was instructed as follows:
Unless you so find from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the defendant of
aggravated assault and next consider whether the defendant is guilty of
the offense of robbery.
 
          After the application paragraphs concerning the offense of robbery, the jury
was instructed as follows:
Unless you so find from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the defendant of
robbery and next consider whether the defendant is guilty of the lesser
offense of assault.The record does not reflect that appellant objected to the jury charge at trial.
          On appeal, appellant complains that the “instruction requiring that the jury
unanimously agree to find the accused ‘not guilty’ of the greater offense before it can
even consider a lesser-included offense improperly impinges on the jury’s freedom
of choice among greater and lesser offenses.”
          In Barrios v. State, 283 S.W.3d 348 (Tex. Crim. App. 2009), the court
considered the same contention as appellant advances in this case, concerning a
charge virtually identical to the one presented in this case. 
          In Barrios, the jury was instructed,
Unless you so find from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, you will acquit the defendant of
capital murder and next consider whether the defendant is guilty of
robbery.

Id. at 349. The charge next instructed the jury on the elements of robbery and
directed it to “acquit the defendant of robbery” unless it found from the evidence
“beyond a reasonable doubt” that the defendant was guilty of robbery. Id. at 350.
          On appeal to this court, the appellant argued that the trial court erred by
instructing the jury that it must unanimously agree that he was not guilty of capital
murder before it could consider the lesser-included offense of robbery. Id. We
overruled his point of error, concluding that the instruction did not require the jury
to unanimously agree on acquittal. Id. (citing Barrios v. State, No. 01-07-00099-CR,
2008 WL 1747738, at *1 (Tex. App.—Houston [1st Dist.] Apr. 17, 2008)). We
concluded, rather, that the instruction allowed the jury to consider the charge as a
whole and that it could consider the lesser-included offense before making a decision
on the charged offense. Id. ( citing Barrios, 2008 WL 1747738, at *2).
          The court of criminal appeals affirmed our judgment, holding that “the charge
allowed the jury to consider the entire charge as a whole and that the complained-of
instruction does not require the jury to unanimously agree that a defendant is not
guilty of the greater offense before considering a lesser-included offense.” Id. at
353. The court held that there was no error in the charge. Id.
          Here, as in Barrios, we conclude that the charge presented allowed the jury to
consider the entire charge as a whole and that the complained-of instruction did not
require the jury to unanimously agree that appellant was not guilty of the greater
offense before considering a lesser-included offense. Hence, there is no error in the
charge on this basis.
          Accordingly, we overrule appellant’s fifth, sixth, and seventh points of error
in cause number 1157987 and overrule his third, fourth, and fifth points of error in
cause number 1121982.
Closing Argument
          In his eighth point in cause number 1157987 and sixth point in cause number
1121982, appellant contends that the trial court erred by overruling his objection to
the State’s references to punishment issues in its closing argument. 
          There are four permissible areas of jury argument: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; and (4) pleas for law enforcement. Cannady v. State, 11 S.W.3d
205, 213 (Tex. Crim. App. 2000). An argument which exceeds these bounds is error;
however, it only becomes subject to reversal if, in light of the record as a whole, the
argument is extreme or manifestly improper, violative of a mandatory statute or
injects new facts, harmful to the accused, into the trial. See Wesbrook v. State, 29
S.W.3d 103, 115 (Tex. Crim. App. 2000).
          Here, the jury charge authorized the jury to convict appellant of aggravated
robbery, aggravated assault, robbery, or assault. 
          Defense counsel argued in closing,
So with that I would ask you to find [appellant] not guilty. Not guilty
of aggravated robbery, not guilty of aggravated assault, not guilty of
robbery, not guilty of assault as it pertains to [Patricia] and perhaps the
worst thing that he ever did was beat up Martinez to the ground [sic].
 
If you are going to find him guilty of anything, it should be of assault,
which is the number four verdict on both of these charges. Thank you.
 
          Appellant complains of the following emphasized language given by the State
in its rebuttal to defense counsel’s closing argument:
[Defense counsel], with all [due] respect to him, I think he left a couple
of holes out. And I will start kind of where he left off. 
 
He got up here and told that based on that interview that [appellant] got
out of the car to defend his nephew, to help his nephew who was being
assaulted. That is what he got up here and told you to start with. That’s
why he got out. 
But now he’s telling you: Yeah, he did assault the guy . . . He’s saying:
Yeah, he threw him down. He beat him up. 
And he’s conceding you [sic] assault because he knows where that
ranks on the punishment scale. So he’s conceding you of [sic] that,
trying to make you look over here and watch this hand when the real
story is over here.Appellant’s objection, which the trial court overruled, was as follows: “That’s
outside the record, and there is no evidence as to [sic] dealing with the punishment
phase.”

          On appeal, appellant contends that it was improper for the State to “allude to,
imply or discuss the ranges of punishment during the guilt-innocence state of a trial
involving two or more offenses.” Appellant contends that this improper argument
affected a substantial right, namely, to have guilt determined solely on the facts
supporting guilt and not on the potential punishment. 

          As the State contends, it does not appear that appellant’s complaint on appeal
comports with his objection at trial. An issue on appeal will not be considered if it
varies from the objection made at trial. Moore v. State, 233 S.W.3d 32, 38 (Tex.
App.—Houston [1st Dist.] 2007, no pet.) (citing Coffey v. State, 796 S.W.2d 175, 179
(Tex. Crim. App. 1990).

          Even if we conclude that appellant preserved this issue, however, it cannot be
sustained. 

          It is improper to discuss ranges of punishment during the guilt-innocence stage
of a trial involving two or more offenses because it encourages the jury to convict on
the basis of the amount of punishment, rather than the facts supporting guilt. 
McClure v. State, 544 S.W.2d 390, 393 (Tex. Crim. App.1977). Appellant relies on
Freeman v. State to support his contention that the State improperly discussed
punishment ranges in this case. 985 S.W.2d 588,589 (Tex. App.—Beaumont 1999, 
pet. ref’d).

          The State, in its closing argument in Freeman, informed the jury that the charge
would contain an instruction on indecency with a child and explained the difference
between that crime and aggravated sexual assault in relation to the case before them.
Id. The State then said, “And what that means is that aggravated sexual assault of a
child, we talked about the range from probation up to life. With indecency with a
child, the punishment range would be from probation to 20 years.” Id. On appeal,
the court found error and reversed. Id. at 590.

          In the case before us, unlike Freeman, the State did not discuss any specific
punishment ranges. We cannot conclude that the State’s comment concerning
defense counsel’s recognition of where assault “ranks on the punishment scale” rises
to a discussion concerning ranges of punishment. See Cifuentes v. State, 983 S.W.2d
891, 893–94 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d); Cf. McLure, 544
S.W.2d at 393 (finding error where State, in closing, compared punishment ranges of
greater and lesser offenses (murder and manslaughter) that were before jury, as
follows, “I also asked if you could return a verdict of 99 years and you said you
could. . . . You know the most you can get for involuntary manslaughter is 20
years?”). 

          Further, here, given the context in which the State’s comment was made (as a
response to the argument of appellant’s counsel), we cannot conclude that the jury
necessarily took it as a comment that they should assess appellant’s guilt based on
punishment ranges rather than the facts. See Wesbrook, 29 S.W.3d at 115 (explaining
that permissible area for jury argument is “answer to argument of opposing counsel”);
McClure, 544 S.W.2d at 393 . 

          Accordingly, we overrule appellant’s eighth point of error in cause number
1157987 and his sixth point of error in cause number 1121982.

Reforming the Judgment

          In his ninth point of error in cause number 1157987, appellant contends that
the judgment must be reformed to match the jury’s verdict form and the oral
pronouncement of the trial court. The State “concurs with appellant that the jury did
assess only 20 years in cause number 1157987, as indicated by the written verdict
form and the oral pronouncement of the Court.” The State joins appellant’s request.

          An appellate court has the power to correct and reform a trial court judgment
to make the record speak the truth when it has the necessary data and information to
do so. Milczanowski v. State, 635 S.W.2d 445, 447 (Tex. Crim. App. 1983); Nolan
v. State, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.); see also
Tex. R. App. P. 43.2(b). When, as here, trial is by jury, the written verdict provides
the basis for reforming an erroneous recitation in judgment and sentence. 
Milczanowski, 635 S.W.2d at 447.

          Here, the written verdict shows that, in cause number 1157987, the jury
assessed appellant’s punishment at 20 years’ confinement. In addition, the trial court
orally prounced appellant’s sentence in cause number 1157987 as 20 years’
confinement. The trial court’s judgment, however, reflects that appellant was assessed
30 years’ confinement in cause number 1157987. 

          The State also points out, and the written verdict shows that, in cause number
1121982, the jury assessed appellant’s punishment at 30 years’ confinement. The
trial court orally pronounced appellant’s sentence in cause number 1121982 as 30
years’ confinement. The trial court’s judgment, however, reflects that appellant was
assessed 20 years’ confinement in cause number 1121982.

          Accordingly, we reform the trial court’s judgment in cause number 1157987
to reflect that appellant was assessed 20 years’ confinement. We reform the trial
court’s judgment in cause number 1121982 to reflect that appellant was assessed 30
years’ confinement. 

Deadly Weapon Finding

          In his tenth point of error in cause number 1157987 and his seventh point of
error in cause number 1121982 and, appellant contends that the trial court erred by
entering an affirmative finding as to the use of a deadly weapon, “because the jury did
not expressly find that appellant personally used a firearm.”

           In a jury trial, it is the mandatory duty of the trial court to enter a separate and
specific deadly weapon finding in the judgment if the jury makes an affirmative
finding that the defendant used or exhibited a deadly weapon, as defined in section
1.07 of the Penal Code, in the course of committing the offense charged or in
immediate flight from the commission of the offense. Tex. Code Crim. Proc. Ann.
art. 42.12, § 3g(a)(2) (Vernon Supp. 2009); see Tex. Penal Code Ann. § 1.07(17)
(defining deadly weapon” as a firearm or “anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury”). “Affirmative
finding” means an “express determination” by the jury that a deadly weapon was
actually used or exhibited during the commission of the offense. Id. A trial court may
not enter an “implied” deadly weapon finding based solely upon its own assessment
of the evidence and a general guilty verdict. Lafleur v. State, 106 S.W.3d 91, 94–95
(Tex. Crim. App. 2003).

 
          When a jury is the fact-finder, an affirmative finding is made when (1) the
indictment includes an allegation of a “deadly weapon” and the jury verdict reads
“guilty as charged in the indictment”; (2) the indictment does not allege a “deadly”
weapon, but the weapon alleged in the indictment is a deadly weapon per se and the
verdict states that the defendant is guilty “as charged in the indictment”; or (3) the
jury affirmatively answers a special issue on deadly weapon use. See id. at 95–96 &
n.26.

          Here, the indictment in cause number 1121982 alleged as follows:

[Defendant] . . . while in the course of committing theft of property
owned by Alberto Martinez and with intent to obtain and maintain
control of the property, intentionally and knowingly threaten and place
Alberto Martinez in fear of imminent bodily injury and death, and the
Defendant did then and there use and exhibit a deadly weapon, to-wit:
a firearm.

 
          The indictment in cause number 1157987 alleged as follows:

 
[Defendant] . . . while in the course of committing theft of property
owned by Patricia Serrano and with intent to obtain and maintain control
of the property, intentionally and knowingly threaten and place Patricia
Serrano in fear of imminent bodily injury and death, and the Defendant
did then and there use and exhibit a deadly weapon, to-wit: a knife.

It is further presented that, . . . [Defendant] . . . while in the course of
committing theft of property owned by Patricia Serrano and with intent
to obtain and maintain control of the property, intentionally and
knowingly threaten and place Patricia Serrano in fear of imminent
bodily injury and death, and the Defendant did then and there use and
exhibit a deadly weapon, to-wit: a firearm.The charge to the jury included an instruction on the definition of a deadly
weapon; an instruction that aggravated robbery involves the use of a deadly weapon;
and an instruction that the jury could also find appellant guilty as a party. In each
cause, the jury found appellant guilty of aggravated robbery “as charged in the
indictment.”

          Because the indictment specifically alleged the use of a “deadly weapon” and
the jury’s verdict reads “guilty as charged in the indictment,” the affirmative finding
was supported. See Lafleur, 106 S.W.3d at 94–96. Before the jury was authorized
to find appellant guilty, even as a party, they first had to believe beyond a reasonable
doubt that appellant knew that a deadly weapon would be used in the commission of
the offense. See Sarmiento v. State, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d); Johnson v. State, 6 S.W.3d 709, 714 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d). By its verdict, the jury necessarily made the factual
finding to support the entry of an affirmative finding on the use or exhibition of a
deadly weapon. Sarmiento, 93 S.W.3d at 570. Once the jury made the affirmative
finding, the trial court was required to enter this finding in the judgment. See Tex.
Code Crim. Proc. Ann. art. 42.12 § 3g(a)(2). 

          Although appellant stated during his videotaped interview, which was admitted
into evidence and played to the jury, that he took a gun out of the car and tried to
knock Alberto down with it, appellant complains on appeal that the jury failed to find
that he personally used or exhibited a deadly weapon. This court has held that, even
without a special issue submitted to the jury requiring it to find the defendant
personally used a deadly weapon, Code of Criminal Procedure article 42.12 allows
an affirmative finding if the defendant is found guilty as a party to an offense alleging
the use or exhibition of a deadly weapon. Johnson v. State, 6 S.W.3d 709, 714 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d).

          We conclude the trial court did not err when it entered an affirmative finding
of a deadly weapon in the judgment.

          Accordingly, we overrule appellant’s seventh point of error in cause number
1121982 and overrule his tenth point of error in cause number 1121982.

 
 
 
 
 
 
 
 
Conclusion

 We reform the trial court’s judgment in cause number 1157987 to reflect that
appellant was assessed 20 years’ confinement. We reform the trial court’s judgment
in cause number 1121982 to reflect that appellant was assessed 30 years’
confinement. We affirm the judgment of the trial court in each cause number, as
reformed.

 

 



 
Laura Carter Higley

Justice



Panel consists of Justices Jennings, Higley, and Sharp.



Do not publish. See Tex. R. App. P. 47.2(b).