Roger **RODELA,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–90–00762–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 19, 1992.

Rehearing Overruled April 9, 1992.

Publication Ordered April 9, 1992.

---

Allen Isbell, Houston, for appellant.

John Holmes, Jr., Houston, Karen Clark, Debbie Hawkins, and Vic Wisner, Asst. Dist. Attys., for appellee.

Before SAM BASS, COHEN and WILSON, JJ.

OPINION

SAM BASS, Justice.

This is an appeal from an aggravated robbery conviction. After finding appellant, Roger Rodela, guilty, the jury assessed punishment at 52 years confinement. Appellant's complaints on appeal are based on the voluntariness of his written confession to the crime.

We reverse and remand.

Guadelupe Garcia was found dead in her home on the morning of April 19, 1989. She had been stabbed and beaten, and she had a large bite mark on her stomach. Her house was in a state of total disarray—closets and drawers emptied, furniture overturned, and a mattress pulled off the bed.

Josephine Valdez was a neighbor of Mrs. Garcia. On the morning of April 19, 1989, Mrs. Valdez found appellant and Robert Salazar sitting at her dining room table. Mrs. Valdez had known appellant for about three years, and he often stayed at her house when he had nowhere else to stay.

On that same morning, Mrs. Valdez's daughter wanted to wear some earrings to school. Mrs. Valdez had never seen the earrings before and asked where she got them. Her daughter told her that Salazar had given them to her.

On April 26, 1989, Mrs. Valdez turned over the earrings to the Houston Police Department. Sergeant Bill Stephens interviewed Mrs. Valdez in the homicide office. She gave a statement to the police that she saw both appellant and Salazar with several pieces of jewelry. She later testified that, while she told the officer she saw appellant with some jewelry, she never said that she saw appellant with the specific earrings that she gave to the police. A member of Mrs. Garcia's family identified the earrings as belonging to Mrs. Garcia.

On April 27, 1989, Sergeant Maxey obtained an arrest warrant from Judge Michael McSpadden. The warrant was based on Maxey's affidavit that Josephine Valdez had told the police that she saw appellant and Salazar in possession of jewelry belonging to Mrs. Garcia.

After getting the warrant, Sergeants Kennedy, Maxey, Ramsey, and Stephens went to the Denver Harbor area to look for appellant and Salazar. After a lengthy search, Sergeants Kennedy and Maxey decided to go home for the evening. As soon as they got home, they received telephone calls informing them that appellant had been arrested at 4:40 a.m. The officers returned to the police station.

Sergeant Kennedy read appellant his legal warnings, and he and Sergeant Maxey interviewed appellant for about 30 minutes. Appellant agreed to ride with the officers to Denver Harbor to help them look for Salazar. After finding Salazar, they all returned to the station. Sergeant Kennedy went home around 9:00 a.m., and Sergeant Maxey went home about 11:00 a.m. Both officers testified that they neither used physical force or coercion on appellant nor saw anyone else do so.

Sergeants Gafford and Silva continued questioning appellant. At 12:30 p.m., he gave a written statement that he was at Josephine Valdez's house when Salazar killed Mrs. Garcia. Following this statement, appellant agreed to take a polygraph test. He failed the polygraph, and interrogation continued. At 4:05 p.m., appellant gave another written statement. In the second statement, he admitted to serving as a look-out while Salazar murdered Mrs. Garcia. Appellant was read his warnings and waived his rights before making both statements. One of the officers who witnessed the second statement testified that he questioned appellant about the voluntariness of the confession, and appellant told the officer that he was not coerced.

At 8:30 p.m., appellant was taken before a magistrate. The magistrate testified that appellant told him the confession was voluntary. The magistrate saw no physical injuries on appellant. He read appellant his rights, and appellant requested an attorney.

Robert Salazar was tried for capital murder in the 262nd District Court, Judge Doug Shaver, presiding. Judge Shaver testified at the hearing on the motion to sup-

press appellant's confession. He stated that after Salazar's trial he was at a bar with Sergeant Kennedy. Both men had consumed several drinks and were discussing the stresses of their jobs. Sergeant Kennedy became very emotional and said something that Judge Shaver understood to be an admission that he struck or coerced appellant in the course of obtaining his confession. Judge Shaver could not remember exactly what Sergeant Kennedy said that gave him this impression. He reported the conversation to the Special Crimes unit, gave a sworn affidavit, and recused himself from appellant's trial.

Sergeant Kennedy testified at the hearing on the motion to suppress that he did not coerce appellant, nor did he say anything to Judge Shaver to give him that impression. He was not at the station at the time appellant made his confession. Other officers testified that appellant was not physically forced or coerced to confess. Judge Brian Rains denied the motion to suppress.

The State offered no physical evidence connecting appellant with this crime. Hair, blood, and saliva samples taken from the scene did not match appellant's. The bite mark on the deceased belonged to Salazar. Appellant's fingerprints were not found at the scene. Appellant's confession is the only evidence supporting his conviction.

In his first point of error, appellant asserts that the trial court erred in refusing his request for a writ of attachment for Judge Doug Shaver. Judge Shaver testified at the motion to suppress. Appellant then subpoenaed him to testify at trial. When the judge failed to appear, appellant requested a writ of attachment, which the trial court denied.

■ The code of criminal procedure provides that when a witness who has been subpoenaed fails to appear, the State or the defendant shall be entitled to have an attachment issued for the witness. TEX.CODE CRIM.P.ANN. art. 24.12 (Vernon 1989). Additionally, judges have an inherent power to issue compulsory process without regard to statutory authorization, in order to protect the rights guaranteed by the TEX.

CONST. art. I, § 10. *Bludworth v. State*, 330 S.W.2d 436, 438 (Tex.Crim.App.1959).

■ When a subpoenaed witness does not appear, the party calling him must follow three steps to preserve error. *Erwin v. State*, 729 S.W.2d 709, 714 (Tex.Crim. App.1987). First, the party must request a writ of attachment, which must be denied by the trial court. *Id.* Second, the party must show what the witness would have testified to. *Id.* Third, the testimony that the witness would have given must be relevant and material. *Id.* If all three requirements have been met, reversible error will result unless the error made no contribution to the conviction or to the punishment. *Id.;* TEX.R.APP.P. 81(b)(2).

■ In the instant case, Judge Shaver was properly served with a subpoena, and appellant requested a writ of attachment when he failed to appear. The trial court denied the writ of attachment. Thus, the first requirement is met.

Appellant brought Judge Shaver's affidavit before the trial court. He informed the court that he was calling Judge Shaver to testify about the incident discussed in the affidavit. This was the same incident Judge Shaver had described to the same court at the hearing on the motion to suppress. Thus, appellant met the second requirement by showing what Judge Shaver would have testified to.

Judge Shaver would have been the only witness to testify that appellant's confession was involuntary. He would have stated that Sergeant Kennedy indicated that he used some type of force to obtain the confession. His anticipated testimony was relevant and material to the issue of the voluntariness of the confession. Thus, the third requirement is met.

The final determination we must make is whether the exclusion of Judge Shaver's testimony made no contribution to the conviction, beyond a reasonable doubt. Central to this issue is the question of whether the testimony would have been admissible evidence had his presence been compelled. *See Erwin*, 729 S.W.2d at 714. There are two possible ways to prevent Judge Shav-

er's testimony from being admitted: the hearsay rule and the probative value versus prejudicial effect rule.

■ The rules of criminal evidence provide that a statement is not hearsay if it is offered against a party and is made by the party's agent or servant, during the existence of the relationship, concerning a matter within the scope of his agency or employment. TEX.R.CRIM.EVID. 801(e)(2)(D). Judge Shaver's testimony would have been offered against the State. Sergeant Kennedy was, at all times relevant to this case, an agent or servant of the State, as an investigator with the Houston Police Department. The statement concerns force Sergeant Kennedy allegedly used on a suspect while he was acting in his official capacity. This statement is an admission by a party-opponent, and therefore is not excluded by the hearsay rule. TEX.R.CRIM. EVID. 802.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX.R.CRIM.EVID. 403. The testimony in this case is highly probative. It supports appellant's assertion that his confession was made involuntarily. The testimony further shows that appellant raised this claim before he knew about the conversation between Judge Shaver and Sergeant Kennedy. Judge Shaver did not report the conversation to Special Crimes until appellant filed the motion to suppress. Thus, Judge Shaver's report could not have been the motive for appellant's motion. Because the testimony is very probative, it is unlikely to be substantially outweighed by prejudicial effect.

Appellant's confession was *the only* evidence linking appellant to the scene of the crime. Mrs. Valdez stated that she saw appellant and Salazar with some jewelry. However, appellant's possession of the jewelry alone does not show beyond a reasonable doubt that he was involved in the commission of the crime. Only his written confession does so. Thus, we hold that the trial court's denial of the writ of attachment cannot be said, beyond a reasonable doubt, not to have contributed to appellant's conviction.

Appellant's first point of error is sustained.

■ In his second point of error, appellant claims that the trial court erred in refusing to allow the court reporter to read to the jury Judge Shaver's testimony from the motion to suppress hearing. Appellant asserts that the testimony is admissible former testimony.

The rules of criminal evidence provide that testimony given at a prior hearing is admissible if the declarant is unavailable as a witness. TEX.R.CRIM.EVID. 804(b)(1). A witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. TEX.R.CRIM.EVID. 804(a)(5). Appellant subpoenaed Judge Shaver to testify. Judge Shaver's secretary testified that he was on vacation at the time of this trial. Appellant's counsel had tried to find out if Judge Shaver was in Harris County, but was unable to learn his home address or telephone number. Thus, Judge Shaver was unavailable.

Where the declarant is unavailable, the party against whom the testimony is offered must have had an opportunity and similar motive to develop the testimony by direct, cross- or redirect examination at the prior hearing. TEX.R.CRIM.EVID. 804(b)(1). The State cross-examined Judge Shaver at the hearing on the motion to suppress. His testimony at the hearing had the same purpose that it would have had if presented at trial—to show that the confession was involuntary. The State had the same motive to develop the testimony at the hearing that it would have had at trial—to show that Judge Shaver lacked credibility. Thus, this testimony is admissible under the former testimony exception.

The State claims the testimony is inadmissible because it constitutes hearsay within hearsay. As discussed under the first point of error, Judge Shaver's motion to suppress testimony was not hearsay, because Sergeant Kennedy's statements

are the admission of a party-opponent. Furthermore, the State did not object to the testimony as hearsay at the hearing on the motion to suppress.

Appellant's second point of error is sustained.

■ In his fourth point of error, appellant asserts that the trial court erred in admitting appellant's written confession, because it was the fruit of an illegal arrest. He claims the arrest was illegal because the affiant, Sergeant Maxey, misstated the facts that gave him probable cause to believe that appellant committed this offense.

Sergeant Maxey stated in the warrant affidavit: "Affiant was told by Josephine Valdez that she observed Roger Rodela and Salazar in possession of several pieces of jewelry, including several sets of earrings." Mrs. Valdez did not actually make this statement to Sergeant Maxey. She gave this sworn statement to Sergeant Stevens. She indicated in her statement that both suspects appeared to be acting together. They had given both her and her daughter some jewelry.

At the suppression hearing, Mrs. Valdez testified that she saw appellant in possession of several pieces of jewelry. Mrs. Valdez only denies seeing appellant with the specific earrings that she turned over to the police. Sergeant Maxey's affidavit does not state that Mrs. Valdez saw appellant with those earrings.

■ The quantum of information justifying an arrest is measured by the cumulative knowledge of the various police officers working together on the case. *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim.App.1984). Even though Sergeant Maxey did not take Mrs. Valdez's statement himself, the contents his affidavit consisted of the cumulative knowledge all the officers on the case. Thus, the statement Sergeant Maxey made in the affidavit was not false or misleading.

Appellant's fourth point of error is overruled.

■ In his third point of error, appellant claims that the trial court erred by making a sidebar comment on the weight of the

evidence in the presence of the jury. The discussion between the defense attorney and the court leading up to the sidebar comment is as follows:

THE COURT: Call your next witness.

MR. JOLLY: Judge Doug Shaver.

THE COURT: That witness is not here. Call your next witness.

MR. JOLLY: Judge Doug Shaver.

THE COURT: That witness is not here. Call your next witness.

MR. JOLLY: We don't have any other witnesses, Judge, other than Judge Doug Shaver.

THE COURT: Defense has no further witnesses to call at this time. The Defense rests.

MR. JOLLY: Judge, I object to the Court forcing us to rest absent the evidence of Judge Shaver.

THE COURT: Mr. Jolly, as I stated, judge—again and again that witness is not available. If you are not ready to proceed then I'm assuming that you are resting. If you are not resting the Court is resting for you because that witness is not here. I'm not granting your continuance.

. . . .

THE COURT: Both sides rest and close?

MR. JOLLY: Judge, I don't rest. I call Judge Doug Shaver to the witness stand.

THE COURT: That witness is not available. So, you refuse to rest or close on the record, the Court will rest and close for you on the record.

MR. JOLLY: Note my objection to that, Judge.

THE COURT: *I don't know that you need to do any more for appellate purposes, Mr. Jolly.*

MR. JOLLY: That's assuming there's an appeal, Judge.

(Emphasis added.) When the jury left the courtroom, the defense counsel objected to the court's comment concerning an appeal.

■ A judge shall not, at any stage of the proceeding before the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX.CODE CRIM.P.ANN. art. 38.05 (Vernon 1979). To constitute a reversible violation of this article, the comment must be such that it is reasonably calculated to benefit the State or to prejudice the defendant. *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim.App.1981).

Appellant relies on *Hernandez v. State*, 507 S.W.2d 209, 211 (Tex.Crim.App.1974), to support his argument. In that case, the trial judge told the defendant, "You can try that on appeal." The court of criminal appeals stated that the judge's statement indicated to the jury that a conviction was a foregone conclusion in the eyes of the court.

In the instant case, the judge's statement does not imply that he thought appellant was guilty. His comment, "I don't know if you need to do that anymore for appellate purposes," could be interpreted to mean that the judge found the attorney's objections unnecessary, because he *did not* think there was going to be an appeal. We acknowledge that the side-bar comment was one that should not have been made in the presence of the jury. However, if the judge's statement was calculated to send a message to the jury, the statement itself does not indicate what that message was. We are unable to say that the comment was an attempt to benefit the State or prejudice appellant.

Appellant's third point of error is overruled.

The judgment is reversed and the cause remanded for a new trial.