Opinion issued June 23, 2005



















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00919-CR
____________

ROBERT HICKS, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the County Court at Law No. 3
Galveston County, Texas
Trial Court Cause No. 227115
 

 
 
MEMORANDUM OPINION
             Following a bench trial, the trial court found appellant, Robert Hicks, guilty of
the offense of assault


 on a member of his household


 and, after assessing his
punishment at confinement for 180 days, suspended the sentence and placed appellant
on community supervision for a period of 12 months. In two issues, appellant
contends that the evidence was factually insufficient to support his conviction and
that “[t]he State committed prosecutorial misconduct by wrongfully preventing a
material witness from attending trial.” We affirm. 
Factual Background
          The complainant, Susie Ford, testified that, at 9:00 a.m. on July 23, 2003, she
left her apartment that she had leased with appellant to pick up her employment
check. After picking up her check and calling to her apartment to ask whether anyone
wanted to accompany her to cash her check, she picked up her cousin, Shirley
Yanders,


 from the apartment, and went to a credit union to cash the check. 
Thereafter, the complainant and Yanders went shopping and then to a club called
“Hole in the Wall,” where the complainant drank one beer. The complainant testified
that she had not become intoxicated. Thereafter, the complainant and Yanders went
home, where the complainant found appellant sitting in the bedroom. The
complainant explained that appellant argued with her because she went drinking after
she cashed her check, returned home late, and left appellant at the apartment after he
declined to go to the credit union with her. Appellant called the complainant a
“tramp,” “a ho,” “a bitch,” and “a slut,” hit her, and, when she lifted her head,
appellant hit her in the eye with his fist. Thereafter, the complainant ran out of the
apartment and called for emergency assistance. She explained that, although an
ambulance arrived, she declined to go to the hospital. The complainant also noted
that pictures, which were admitted into evidence, were taken of her black eye at the
police department five days after the incident had occurred. 
          During cross-examination, the complainant testified that she hit appellant back
after he hit her. She explained that she was supposed to go to work that day at 3:00
p.m. but did not do so due to her black eye. When asked at what time of day she
received her injury, the complainant explained that she received her black eye before
her shift was to start and that it was still daylight. Although she conceded that she
had been convicted of assaulting her ex-boyfriend several years ago, on redirect
examination, she testified that she had never been physically abusive to appellant. 
          Shirley Yanders testified that, on July 23, 2003, she had been living with
appellant, the complainant, and Carletha, the complainant’s eight-year-old
granddaughter. After the complainant had gone to pick up her check, the complainant
returned to the apartment to pick up Yanders and Carletha. Thereafter, they all went
to the bank and went shopping. The complainant then went inside a bar near a bus
stop. Yanders explained that she left 30 minutes later and that the complainant
picked her up later from another location. They returned to the apartment together,
and Yanders saw appellant sitting on the bed in the bedroom. Yanders heard
appellant and the complainant arguing and “fighting verbally.” She then heard
appellant say to the complainant that “I’ll do such and such and such a thing to you.” 
At this point, Yanders went into the bedroom and saw appellant jump off the bed and
hit the complainant. She then saw the complainant hit appellant in return and
appellant hit the complainant’s eye. The complainant ran out of the apartment after
Yanders separated appellant and the complainant. 
          During cross-examination, Yanders explained that the complainant went inside
the bar by herself and that she and Carletha waited at a bus stop. However, Yanders
explained that, rather than take a bus, she took a taxi to a friend’s house, where the
complainant picked her up before they returned to the apartment. Yanders testified
that she could not remember how dark it was when the complainant picked her up
from the friend’s house. Yanders further testified that she vaguely remembered
Galveston Police Officer C. Teague’s visit to the apartment but that she did not talk
to Teague. 
          In his defense, appellant called Officer Teague and George Linko. Appellant
also testified on his own behalf. Officer Teague testified that she had conducted a
follow-up interview with both the complainant and Yanders. When asked how
involved Yanders was in the interview, Teague explained that Yanders had expressed
her concern about the complainant and had participated in the interview for at least
15 to 20 minutes. Teague testified that she had read the report of Galveston Police
Officer M. Moyer, the investigating officer, but she could not recall from reading the
report the time of day that the incident had occurred. Finally, Teague testified that,
during the follow-up interview, the complainant had told her that she had been
intoxicated on the day of the incident. 
          George Linko testified that he had been friends with appellant for seven to ten
years, that they had once worked together at a gas station, and that they had gone out
a few times for drinks. Linko explained that he had seen the complainant and
appellant engage in only a couple of arguments and that the “meanest” that he had
ever seen appellant was “[j]ust arguing a couple of times” and “passing words.” He
further explained that the worst thing that he had seen appellant do while appellant
was intoxicated was to pass out. Finally, Linko testified that, based on his
relationship with appellant, he did not consider appellant to be a violent person. 
          Appellant testified that, on July 23, 2003, which was his day off from work, at
around 8:00 a.m., he began drinking coffee but then started drinking beer. He
explained that he had not wanted to go with the complainant and Yanders to cash the
complainant’s check at around 9:00 a.m. After the complainant and Yanders left,
appellant went back to sleep, woke up around 4:00 p.m., watched television in the
bedroom, and drank more beer. When he awoke, Yanders and Carletha were in the
apartment and, when appellant asked Yanders about the complainant, Yanders told
him that the complainant had returned to the apartment to change clothes earlier in
the day and then went to work. When the complainant returned to the apartment at
around 9:00 p.m., the complainant went into the bedroom, where she and appellant
started “having words.” Appellant explained that he had wanted to know where the
complainant had been because he had thought that she was at work and that he
thought that the complainant was “[g]etting drunk or seeing some other guy.” The
complainant grabbed appellant by his throat. Appellant pushed the complainant, and
she fell over the bed and hit the dresser. The complainant then stood up, held her eye,
and grabbed appellant by his throat again. In response, appellant swung at the
complainant, and the complainant then stopped and left the apartment. After the
incident, appellant resumed watching television. Thereafter, law enforcement officers
arrived and arrested appellant. Appellant denied threatening the complainant and
trying to hit her first. Appellant explained that he thought that the complainant was
intoxicated at the time and that he was afraid of the complainant because she had
previously told him that she had committed violence against one of her ex-boyfriends. 
          During cross-examination, appellant admitted that he yelled at the complainant
and called her names. He also agreed that he had been convicted of a class C
misdemeanor assault of the complainant on June 25, 2001, but explained that he did
not “remember what that was all about.” On redirect examination, he remembered
that he had gone to jail for committing the offense. He also admitted that he never
told Officer Moyers, the investigating officer, that he had only been trying to defend
himself against the complainant. During redirect examination, he testified that, at the
time of the incident, he “was drunk, but [he] wasn’t real drunk” and agreed that he
recalled the incident clearly. Sufficiency of the Evidence
          In his first issue, appellant argues that the evidence was factually insufficient
to prove that appellant assaulted the complainant because “no rational finder of fact
could have found the [a]ppellant guilty beyond a reasonable doubt.” Appellant
contends that “the incredible testimony of the State’s witnesses on numerous points
coupled with their contradictions makes their testimony so suspect as to be lacking
any credibility” and that his “evidence of self-defense was not rebutted by the State’s
evidence proving that [a]ppellant struck [the complainant] or by [the State’s]
argument that the finder of fact should disbelieve the [a]ppellant’s assertion of self-defense due to his lacking credibility.” 
            When conducting a factual sufficiency review, we view all of the evidence
neutrally, not in the light most favorable to the verdict, and we will set aside the
verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 483 (Tex.
Crim. App. 2004)). When a defendant challenges the factual sufficiency of the
rejection of a defense, we review all the evidence in a neutral light and ask whether
the State’s evidence taken alone is too weak to support the finding and whether the
proof of guilt, although adequate taken alone, is against the great weight and
preponderance of the evidence. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim.
App. 2003). We must not substitute our judgment for that of the fact finder. Zuniga,
144 S.W.3d at 481-82. Although our analysis considers all the evidence presented
at trial, we note that the trier of fact is the exclusive judge of the facts, the credibility
of the witnesses, and the weight to be given to their testimony. Sharp v. State, 707
S .W.2d 611, 614 (Tex. Crim. App. 1986); Jaggers v. State, 125 S.W.3d 661, 672
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). Unless the available record clearly
reveals that a different result is appropriate, we must defer to the trier of fact’s
determination concerning what weight to give contradictory testimonial evidence
because this resolution often turns on an evaluation of the credibility and demeanor
of the witnesses, and the jurors were in attendance when the testimony was delivered. 
Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).
            A person commits the offense of assault if he intentionally, knowingly, or
recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01(a)(1)
(Vernon Supp. 2004-2005). However, “a person is justified in using force against
another when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of unlawful
force.” Id. § 9.31 (Vernon 2003). A reasonable belief is defined as one “that would
be held by an ordinary and prudent man in the same circumstances as the actor.” Id.
§ 1.07(42) (Vernon Supp. 2004-2005). 
          In support of his argument that the evidence was factually insufficient to
support his conviction, appellant asserts that “[t]he entire argument under the factual
sufficiency challenge hangs on [the complainant’s] and Ms. Yanders’s credibility, the
State’s only witnesses.” First, appellant asserts that the complainant lacked
credibility regarding (1) “the issue of whether or not she was intoxicated during the
incident in question”; (2) “the time the incident actually occurred”; (3) “why she did
not go to work that day”; and (4) “her past incident of family violence.” Second,
appellant asserts that Yanders’s testimony lacked credibility regarding (1) “whether
she came home with [the complainant] or whether she was already at the apartment
when [the complainant] came home from drinking”; (2) “her interview with Officer
[C.] Teague”; and (3) “her admittedly close relationship to [the complainant].” 
          Appellant also contends that he “presented direct evidence of self-defense by
testifying that [the complainant] choked him twice prior to him hitting her in self-defense” and that “George Linko testified as a character witness for the [a]ppellant
that [appellant] had a reputation for being a nonviolent person . . . , even when he had
been drinking.” Appellant notes that, “after [he] met his initial burden of producing
some evidence to support his . . . self-defense justification defense, the State was
required to persuade the finder of fact beyond a reasonable doubt that the [a]ppellant
did not act is self-defense.” 
          Here, however, there is ample evidence that appellant caused bodily injury to
the complainant. The complainant testified that, after she arrived at the apartment
that she shared with appellant, appellant called her “a tramp,” “a ho,” “a bitch,” and
“a slut” and then hit her. The complainant further testified that, when she lifted her
head after being struck, appellant hit her again in the eye, causing it to bruise.
Yanders testified that she heard appellant and the complainant arguing and “fighting
verbally.” Yanders further testified that she saw appellant jump off of the bed, hit the
complainant once, and hit the complainant again in the eye. Appellant testified that
he and the complainant were “having words” before the physical altercation took
place and agreed that he yelled at her and called her names. He also testified that he
was intoxicated during his altercation with the complainant. 
          We note that the trier of fact’s decision to accept or to reject appellant’s claim
of self-defense ultimately hinged on appellant’s credibility. As the exclusive judge
of the facts, the credibility of the witnesses, and the weight to be given their
testimony, the trial court, as the fact finder, was free to believe or disbelieve all or any
part of the State’s witnesses’, appellant’s witnesses’, or appellant’s testimony. See
McKinny v. State, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). When the fact finder’s determination depends primarily upon its evaluation of
the witnesses’ demeanor and credibility, it is entitled to almost total deference. 
Johnson, 23 S.W.3d at 8-9. 
          Viewing all of the evidence neutrally, we conclude that the evidence was not
so weak that the trial court’s finding of guilt and implicit rejection of appellant’s self-defense claim was clearly wrong or manifestly unjust. We also conclude that the
contrary evidence to the trial court’s finding of guilt and implicit rejection of
appellant’s self-defense claim was not so strong that the standard of proof beyond a
reasonable doubt could not have been met. Accordingly, we hold that the evidence
was factually sufficient to support appellant’s conviction for the offense of assault.
          Accordingly, we overrule appellant’s first issue.
Preventing Appearance of Material Witness
          In his second point of error, appellant contends that “[t]he State committed
prosecutorial misconduct by wrongfully preventing a material witness from attending
trial.” Appellant asserts that “the State misrepresented the whereabouts and avocation
of Officer M. Moyer in violation of the discovery process” when the State “produced
the name of Officer Moyer as a trial witness in the case and listed his avocation as
peace officer with the Galveston Police Department at a time when Officer Moyer
was not a peace officer with the Galveston Police Department”; the State first
informed appellant on the day of trial that Moyer was no longer employed by the
Galveston Police Department; “the State added to the misrepresentation by issuing
a subpoena for Officer Moyer through the Galveston Police Department,” which
“caused appellant to fail to subpoena Officer Moyer”; pursuant to Code of Criminal
Procedure article 24.03,


 “when a witness has been served with a subpoena at the
instance of either party in a particular case, that execution of process inures to the
benefit of the opposite party in a particular case in the event the opposite party desires
to use that witness on the trial of the case”; and, “when a witness has once been
served with a subpoena, no further subpoena may be issued for that witness.”
          Our review of the record shows that, on April 27, 2004, the State listed Officer
Moyer’s name as a trial witness on its witness list and listed his “avocation” as a
peace office with the Galveston Police Department. The record also shows that the
State filed its application for the issuance of a subpoena to compel the attendance of
Moyer on April 26, 2004. Moreover, the return of service in the record shows that
the State served Officer Moyer with a subpoena on April 29, 2004, at 1:33 p.m. 
          When a subpoenaed witness does not appear, the party calling him must follow
three steps to preserve error. Sturgeon v. State, 106 S.W.3d 81, 85 (Tex. Crim. App.
2003); Rodela v. State, 829 S.W.2d 845, 848 (Tex. App.—Houston [1st Dist.] 1992,
pet. ref’d). First, the party must request a writ of attachment, which must be denied
by the trial court. Sturgeon, 106 S.W.3d at 85; Rodela, 829 S.W.2d at 848. Second,
the party must show what the witness’s testimony would have been. Sturgeon, 106
S.W.3d at 85; Rodela, 829 S.W.2d at 848. The defendant may make this showing by
attaching affidavits to a motion for continuance or motion for new trial or by
providing testimony during a hearing on a motion for new trial. Gentry v. State, 770
S.W.2d 780, 787 (Tex. Crim. App. 1988). A party’s assertion of the anticipated
testimony in open court is also sufficient to preserve error. Sturgeon, 106 S.W.3d at
83. Third, the testimony that the witness would have given must be relevant and
material. Id. at 85; Rodela, 829 S.W.2d at 848. If all three requirements have been
met, reversible error will result unless the error made no contribution to the
conviction or to the punishment. Sturgeon, 106 S.W.3d at 85; Rodela, 829 S.W.2d
at 848. 
          In the instant cause, there is no evidence in the record that appellant requested
a writ of attachment. Therefore, appellant has failed to meet the first requirement
necessary to preserve error regarding the failure of a subpoenaed witness to appear.
Therefore, we hold that appellant has failed to preserve error for our review regarding
Officer Moyer’s failure to appear at trial. 
          We overrule appellant’s second issue.
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).