

NUMBER 13-10-00146-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HERIBERTO LOZANO ZAMORA JR.,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Heriberto Lozano Zamora Jr., was charged by indictment with one count of cruelty to non-livestock animals, a state-jail felony. *See* TEX. PENAL CODE ANN. § 42.092(b)(1), (c) (Vernon Supp. 2010). After a jury trial, Zamora was convicted of the underlying offense, and the jury assessed punishment at six months' incarceration in the State-Jail Division of the Texas Department of Criminal Justice with a $2,500 fine.

By two issues, Zamora argues that: (1) the evidence supporting his conviction is legally and factually insufficient; and (2) he received ineffective assistance of counsel. We affirm as modified.

## I. BACKGROUND

On the afternoon of July 20, 2008, Rosana Elizondo and her brother, Jesus Elizondo, were talking on the front porch of Rosana's house, which is located in Weslaco, Texas. Rosana had just finished entertaining guests for her son's first birthday party. While talking, Rosana and Jesus heard the sound of an all-terrain vehicle ("ATV") approaching the house. Rosana looked up and saw Zamora driving the ATV at a very fast speed down the street. She estimated that Zamora must have been travelling at twenty-five or thirty miles per hour. She also noticed that Zamora was using the ATV to pull a dog on a short leash and that the dog was struggling to keep up.[1] Rosana stated that the dog was "running as fast as he could alongside [the ATV.]" She watched Zamora drive by until the ATV turned onto another street and her view was obscured by houses. Shortly thereafter, Zamora reappeared and reached a stop sign at an intersection near Rosana's house. At this point, the dog was no longer running; it was in a "squatting position" because it appeared as if the dog could no longer walk. Rosana then observed Zamora accelerate on the ATV and drag the dog across the intersection.

Jesus also observed Zamora driving the ATV while pulling a dog with a leash attached to the dog's neck collar.[2] Jesus recalled seeing Zamora looking back at the

---

[1] Rosana noted that the leash Zamora used to pull the dog with the ATV was so short that "the dog's head was titled upward towards the ATV."

[2] Zamora testified that he was merely walking the dog using a fifteen-foot retractable leash while driving the ATV. Zamora noted that he had done this before and that the dog loved chasing the ATV.

2

dog and laughing and smiling as the dog dragged limply behind the ATV. In fact, Jesus saw the dog stumble as it tried to keep up with the ATV. The dog eventually lost its footing and slid on its right side along the asphalt pavement as Zamora continued to drive the ATV. Jesus remembered seeing the dog bounce several times off the pavement as it was being dragged by Zamora.

After witnessing the dog being dragged, Rosana requested that her husband, Adam Villarreal, come outside. When he got outside, Adam saw that the ATV was stationary at an intersection and that the dog and the dog's lease were attached to the ATV and the dog was seated on the pavement. Adam observed Zamora drive the ATV forward while dragging the dog behind, even though, at this point, the dog was "sitting down." Jesus then got into his car and attempted to intercept the ATV. Jesus stopped at another intersection and positioned his car so that Zamora could not proceed. Jesus told Zamora that he needed to pick up his dog because the dog was shaking uncontrollably and appeared to be unable to stand. Zamora got off of the ATV and began yelling at Jesus. Rosana overheard the argument between Zamora and Jesus and recalled that Zamora told Jesus that "I [Zamora] bought the dog, it's my dog, I can do whatever the fuck I want with him." Jesus signaled for Adam to call the police, so Adam went inside the house to get the family's cordless telephone and called the police. At this point, Zamora picked up the dog, which was extremely bloody, got back onto the ATV, and drove back to his house. Jesus followed Zamora to get more information about Zamora's address to convey to police.

Zamora observed Jesus following him and interpreted Jesus's actions as threatening to Zamora's family.[3]  Jesus then returned to Rosana's house where he, Rosana, and Adam waited for police to arrive.  However, prior to the arrival of police, Zamora walked towards Rosana's house yelling, "you don't tell me what to do," and other statements.  In response to Zamora's menacing behavior, Adam made a second call to police.  When the police arrived, Zamora was escorted back to his house.

David Garcia, a police officer with the Weslaco Police Department at the time of the incident, and Juan Samuel Hernandez, a lieutenant with the Weslaco Police Department, responded to the scene of the incident.  Officer Garcia escorted Zamora back to his residence.  While at Zamora's residence, Officer Garcia observed a large amount of blood on Zamora's clothing and on the ATV.  Officer Garcia found the dog lying on the ground in Zamora's backyard.  The dog appeared to have been recently sprayed with a water hose.  Nevertheless, the dog was shaking and trembling uncontrollably.  Officer Garcia testified that Zamora stated that he was merely walking his dog around the block and "that he was pulling it with the ATV but that he was not going fast."  Officer Garcia stated that the dog was a six-month-old Golden Retriever that had "scrapes on the top of his head, he had cuts and scrapes on his stomach, on

---

[3] At trial, Zamora specifically testified that he was fearful for his family's safety when he observed Jesus following him; Zamora also testified that Jesus was yelling at him in a threatening manner and that Adam or Jesus had a gun, though later testimony indicated that neither had a gun and that the object that Zamora described was a telephone.  After hearing this testimony, the State questioned Zamora about several prior bad acts that he had committed, including an arrest in 2009, for assaulting his wife, which resulted in a protective order being issued; another assault charge perpetrated against his wife in 2003, to which Zamora pleaded guilty; and a 1998 conviction for assault, which resulted in Zamora serving time in the Texas Youth Commission system.  Zamora's counsel objected to the introduction of this evidence, asserting that the prior bad act evidence was irrelevant and that State had not provided Zamora with adequate notice of its intent to use such evidence.  The State responded that Zamora had "opened the door" to the admission of such evidence by testifying that he was concerned for his family's safety.  After a discussion before the bench, Zamora admitted that the State had properly noticed him of its intent to use such evidence and requested that the jury charge include a limiting instruction about the evidence, which the trial court stated would be considered at the charge conference.

4

the bottom of his stomach, he had scrapes and cuts on all four paws" that were fresh and bleeding.[4] Officer Garcia noted that the dog appeared to be in pain. Officer Garcia subsequently arrested Zamora and called the local Animal Control. Lieutenant Hernandez testified that he also observed blood on Zamora's pants and the ATV. Zamora admitted to Lieutenant Hernandez that "the dog got tired and he [Zamora] started dragging him. He thought it was only for a little distance." Lieutenant Hernandez echoed Officer Garcia's testimony regarding the injuries to the dog and that the dog "was kind of shaking like he was hurt."

Thereafter, Animal Control arrived and transported the dog to the Palm Valley Animal Center (the "Center"). Mary Garza, the health care manager at the Center, observed that the dog had numerous cuts and lacerations on its paws, head, and chest. She recalled that there was a whole lot of blood involved and that the dog "was suffering." Garza noted that the Center does not have medications to treat animals, nor does it employ a veterinarian; thus, animals brought to the Center typically do not receive any treatment for their injuries. In addition, animals are not allowed to leave the premises of the Center until the Center receives permission from the city or municipality. As a result of this policy, Zamora's dog did not receive any medication or treatment for his injuries. About two weeks after he arrived at the Center, the dog began to get sick from infections, and Garza sought a release from the city to proceed with euthanasia. However, the process was delayed, and the dog ultimately died on his own a month-and-a-half after he arrived at the Center.

---

[4] Several pictures documenting the dog's horrific injuries were admitted into evidence. Among the evidence admitted were pictures of the blood trail left by the dog on the pavement as it was being dragged. Officer Garcia testified that the length of the blood trail was approximately 253 feet but that the blood trail does not necessarily indicate "how long the dog was being dragged."

5

Zamora was charged by indictment with the state-jail-felony offense of cruelty to non-livestock animals. *See id.* At the conclusion of the State's case-in-chief, Zamora moved for a directed verdict, which the trial court denied. Thereafter, the jury convicted Zamora of the underlying offense and sentenced him to six months' incarceration in the State-Jail Division of the Texas Department of Criminal Justice. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Zamora asserts that the evidence supporting his conviction is legally and factually insufficient. Specifically, he claims that the evidence is insufficient because the State's witnesses allegedly offered conflicting testimony as to whether the dog was running alongside the ATV or was being dragged by the ATV. Zamora also argues that the evidence is insufficient because the State did not present evidence from a veterinarian to explain the extent of the dog's injuries. We disagree.

### A. Standard of Review

The court of criminal appeals has recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at **25-26, *57 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion). Accordingly, we review Zamora's claims of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review. *Id.* at *37, *57.

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *14 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). "[T]he fact[-]finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Zamora (1) intentionally, knowingly, or recklessly (2) "torture[d] an animal or in a cruel manner kill[ed] or cause[d] serious bodily injury to an animal."[5] TEX. PENAL CODE ANN. § 42.092(b)(1). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his

---

[5] Section 42.092 of the penal code defines an "animal" as "a domesticated living creature, including any stray or feral cat or dog . . . ." TEX. PENAL CODE ANN. § 42.092(a)(2) (Vernon Supp. 2010). Further, "a cruel manner" encompasses an act "that causes or permits unjustified or unwarranted pain or suffering." *Id.* § at 42.092(a)(3). The torture of an animal is defined as "any act that causes unjustifiable pain or suffering." *Id.* § at 42.092(a)(8).

conscious objective or desire to engage in the conduct or cause the result." *Id.* §
6.03(a) (Vernon 2003). "A person acts knowingly with respect to a result of his conduct
when he is aware that his conduct is reasonably certain to cause the result." *Id.* §
6.03(b). Further, "[a] person acts recklessly . . . with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or the result
will occur." *Id.* § 6.03(c). Intent may "be inferred from circumstantial evidence[,] such
as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50
(Tex. Crim. App. 2004); *see Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)
(stating that a fact-finder may infer both knowledge and intent from the defendant's acts,
words, or conduct and from the nature of the wounds inflicted on the victim); *Hernandez
v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Ledesma v. State*, 677 S.W.2d
529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable mental state may be
inferred from the surrounding circumstances).

The State is not required to present direct evidence to establish guilt. *See
Guevara*, 152 S.W.3d at 49. "Circumstantial evidence is as probative as direct evidence
in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient
to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see
Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and
independently to the guilt of the appellant, as long as the cumulative effect of all the
incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13;
*see Guevara*, 152 S.W.3d at 49.

**A. Discussion**

On appeal, Zamora argues that the evidence supporting his conviction is insufficient because the State's witnesses "couldn't be sure if the dog was dragged or if it was running next to Appellant while he was in [sic] the ATV." Several witnesses testified to seeing Zamora drag his six-month old Golden Retriever behind an ATV. Witnesses also testified that Zamora was travelling on the ATV at a high rate of speed while dragging the dog. In particular, Rosana testified that she saw the dog running alongside the ATV initially, but after Zamora accelerated the ATV to twenty-five or thirty miles per hour, the dog had trouble keeping up. She noted that the dog "was running for his life" as he tried to keep up with Zamora's ATV. Jesus stated that once Zamora accelerated the ATV to a high speed, the dog began to stumble and was dragged along the pavement on the dog's right side. While dragging the dog, Jesus observed Zamora looking back at the dog and laughing and smiling, as if Zamora was enjoying the fact that the dog was suffering. Based on our review of the trial testimony, we cannot say that the witnesses offered conflicting accounts of the incident so as to render the evidence supporting Zamora's conviction insufficient. Nevertheless, to the extent that the witnesses' recollections of the incident conflict, the weighing of the supposedly conflicting evidence was within the province of the jury to resolve. *See Jackson*, 443 U.S. at 326 (noting that a "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"); *Wesbrook*, 29 S.W.3d at 111; *see also Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *16 n.13. Clearly, by convicting Zamora of the offense, the jury believed the witnesses' testimony regarding what happened to the dog on the

afternoon of July 20, 2008. Furthermore, the jury's resolution of the facts corresponds with Officer Garcia and Lieutenant Hernandez's testimony that Zamora admitted to them that he dragged the dog while riding the ATV when the dog became tired and the testimony of Adam, Rosana, and Jesus, who each stated that they observed Zamora dragging the dog behind his ATV.

Zamora also argues that the evidence is insufficient because the State did not present any "evidence from a veterinarian to explain to the jury how severe the injuries were." In making this argument, Zamora does not cite any relevant authority requiring the State to present such evidence. Regardless, section 42.092 of the penal code required the State to prove that Zamora killed, tortured, or caused serious bodily injury to the dog by inflicting unjustifiable or unwarranted pain or suffering. *See* TEX. PENAL CODE ANN. § 42.092. The record contains numerous pictures of the dog's horrific injuries, documenting each of the cuts and lacerations on the dog and showing the 253-foot blood trail left by the dog as he was being dragged behind the ATV. Furthermore, Officer Garcia and Lieutenant Hernandez testified that there was a significant amount of blood on Zamora's clothing and on the ATV that was from the dog. Officer Garcia noted that the dog had fresh cuts and scrapes on its head, paws, and stomach; that the dog was shaking and trembling uncontrollably; that the dog appeared to be in pain; and that Zamora had attempted to wash the blood off of the dog prior to the arrival of police. *See Guevara*, 152 S.W.3d at 50 (stating that attempts to conceal incriminating evidence are circumstances of guilt). Garza, the health care manager at the Center, testified that Zamora's dog was brought to the center with cuts and lacerations to his paws, chest, and front part of his head and that these injuries were consistent with being dragged.

10

Garza further testified that the dog was suffering and appeared to be in a lot of pain. The dog's pain and suffering was so significant that Garza submitted a request to the city to quickly euthanize the dog in an attempt to end his misery. Testimony from a veterinarian would have been cumulative of the photographs and testimony which demonstrated the extent and seriousness of the dog's injuries. Based on the cumulative force of all the incriminating circumstances, the jury could have reasonably inferred that Zamora's dog sustained significant injuries as a result of being dragged behind Zamora's ATV without the aid of a veterinarian's testimony. *See Hooper*, 214 S.W.3d at 13, 16-17 (stating that "[j]uries are permitted to make reasonable inferences from the evidence presented at trial"; and that "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions").

Viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Zamora was guilty of the underlying offense of cruelty to a non-livestock animal. *See Jackson*, 443 U.S. at 319; *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *14; *see also* Tex. Penal Code Ann. § 42.092. Accordingly, we overrule Zamora's first issue.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Zamora contends that his trial counsel provided ineffective assistance of counsel because he failed to object to allegedly inadmissible hearsay evidence and evidence of extraneous offenses and bad acts introduced by the State, including prior incidents where Zamora assaulted his wife and got into a fight that resulted in his incarceration in the Texas Youth Commission system.

### A.  Standard of Review

11

To establish ineffective assistance of counsel, Zamora must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Dewberry v. State*, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999) (holding that appellant must show a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt as to appellant's guilt); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d at 851. Zamora has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Zamora overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts or omissions that form the basis of Zamora's claims of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851. A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable

12

assistance. *Thompson*, 9 S.W.3d at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## B. Alleged Hearsay Statements

On appeal, Zamora complains about the admission of testimony from police that "someone was dragging a dog." Zamora also complains about testimony that he told police officers that "he could do whatever he wanted to do to the dog because it was his property." Zamora argues that such testimony was hearsay and prejudicial to his case; it should have been excluded from his trial; and trial counsel's failure to object amounted to ineffective assistance. We first note that Zamora did not file a motion for new trial or any other post-judgment motion arguing ineffective assistance of counsel; thus, the record does not contain an explanation from Zamora's trial counsel as to his trial strategy. As mentioned above, a silent record regarding trial counsel's actions will usually not overcome the strong presumption of reasonable assistance, unless trial counsel's actions are so outrageous that no competent attorney would have engaged in such actions. *See Thompson*, 9 S.W.3d at 813-14; *see also Roberts*, 220 S.W.3d at 533; *Goodspeed*, 187 S.W.3d at 392. For the reasons outlined below, we cannot say that trial counsel's failure to object to the statements Zamora characterizes as hearsay was so outrageous as to amount to ineffective assistance of counsel.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible. *Id.* at R. 802. A "matter asserted"

13

includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement flows from the declarant's belief as to the matter. *Id.* at R. 801(c). When information is offered for a reason other than to prove the truth of the matter asserted, the evidence may be admissible. *Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000); *see Lopez v. State*, 200 S.W.3d 246, 254 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd). Further, a statement is not hearsay if it is offered against a party and it is the party's own statement in either an individual or representative capacity. *See* TEX. R. EVID. 801(e)(2)(A); *see also Rodela v. State*, 829 S.W.2d 845, 847-50 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd).

Officer Garcia testified that "people were calling the police department that [sic] he [Zamora] was dragging a dog." Lieutenant Hernandez stated that eyewitnesses "had seen this guy [Zamora] dragging a dog on—with an ATV." This testimony amounts to an explanation from the police as to how Zamora became a suspect in this case, and the questions prompting these responses were not designed to elicit hearsay testimony. *See Osbourn v. State*, 92 S.W.3d 531, 536-37 (Tex. Crim. App. 2002) (noting that the testimony of a police officer based on his experience is admissible as a lay opinion); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *see also Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.–Dallas 2000, no pet.) ("Police officers may testify to explain how the investigation began and how the defendant became a suspect."). Therefore, this testimony was admissible. *See Osbourn*, 92 S.W.3d at 536-37; *Dinkins*, 894 S.W.2d at 347; *see also Lee*, 29 S.W.3d at 577. In addition, Officer Garcia and Lieutenant Hernandez's testimony regarding Zamora's dragging of the dog was cumulative of testimony given by Rosana, Adam, and Jesus, each of whom testified that

14

they witnessed Zamora dragging the dog. Therefore, any harm associated with the admission of Officer Garcia and Lieutenant Hernandez's testimony would be harmless given that it was cumulative of other evidence admitted at trial without objection. *See Matz v. State*, 21 S.W.3d 911, 912 (Tex. Crim. App. 2000) (stating that if other properly admitted evidence proves the same facts, any error is harmless); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (same); *see also Darby v. State*, 922 S.W.2d 614, 623-24 (Tex. App.–Fort Worth 1996, pet. ref'd) (holding that a failure to object to cumulative evidence is harmless and will not support a claim of ineffective assistance of counsel). Further, and perhaps most importantly, Officer Garcia and Lieutenant Hernandez's testimony regarding Zamora's dragging of the dog would constitute an exception to the hearsay rule—an admission of a party opponent—because Zamora previously admitted to police that he had dragged the dog but only for a short distance. *See* TEX. R. EVID. 801(e)(2)(A); *see also Cunningham v. State*, 846 S.W.2d 147, 151 (Tex. App.–Austin 1993), *aff'd*, 877 S.W.2d 310 (Tex. Crim. App. 1994) (holding that testimony regarding appellant's out-of-court statements is admissible as an admission of a party opponent); *Rodela*, 829 S.W.2d at 847-50.

Zamora also complains that Lieutenant Hernandez's testimony that he heard Zamora tell Rosana, Adam, and Jesus that "it's none of your business" was inadmissible hearsay to which trial counsel should have objected. Once again, this testimony was cumulative of other testimony admitted at trial without objection. In particular, Rosana testified that she heard Zamora exclaim that "I bought the dog, it's my dog, I can do whatever the fuck I want with him." She also overheard Zamora state that "nobody tells him what to do." Jesus noted that Zamora encouraged him to call the

15

police because Zamora believed that the police would say that the dog "was his property, he could do whatever he wanted to it." Because this complained-of testimony is cumulative of other evidence in the record, we cannot say that trial counsel was deficient in failing to object. *See Matz*, 21 S.W.3d at 912; *Brooks*, 990 S.W.2d at 287; *see also Darby*, 922 S.W.2d at 623-24. Moreover, we note, once again, that Lieutenant Hernandez explained in his testimony how Zamora became a suspect in this case, and he described his own perception of the crime scene while he was there. *See Osbourn*, 92 S.W.3d at 536-37; *Dinkins*, 894 S.W.2d at 347; *see also Lee*, 29 S.W.3d at 577.

Because the record is silent as to trial counsel's trial strategies and because the statements made by Officer Garcia and Lieutenant Hernandez are either cumulative of other evidence, fall into a hearsay exception, or explain how Zamora became a suspect in this case, we conclude that the testimony was admissible at trial, *see Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) ("When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible."); thus, we cannot say that Zamora has met his burden in proving that trial counsel's failure to object to these statements amounted to ineffective assistance of counsel. *See Strickland*, 466 U.S. at 684; *see also Thompson*, 9 S.W.3d at 813; *Cannon*, 668 S.W.2d at 403; *Jaynes*, 216 S.W.3d at 851.

### C. Zamora's Prior Bad Acts

Zamora also argues that his trial counsel was ineffective because he should have objected to the admission of testimony regarding Zamora's prior assaults of his wife and a prior fight that resulted in his incarceration in the Texas Youth Commission system.

16

First, we note that Zamora is incorrect in stating that trial counsel did not object to the admission of the evidence pertaining to the prior assaults of his wife. In fact, trial counsel lodged a rule 404(b) objection and objected that the State had not provided him with notice of its intent to use such evidence. Trial counsel later abandoned his notice objection. Nevertheless, trial counsel filed a motion in limine to prevent such evidence from being introduced at trial. Also, the jury charge included an instruction prohibiting the jury from considering extraneous-offense evidence as substantive evidence of Zamora's guilt in this case and only permitted the jury to consider this evidence for the purpose of weighing Zamora's credibility. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."); *see also Cordova v. State*, 296 S.W.3d 302, 312 (Tex. App.–Amarillo 2009, pet. ref'd) (holding that testimony referring to extraneous offenses can be rendered harmless by an instruction to disregard such testimony, unless it is so clearly calculated to inflame the minds of the jury and is of such a nature that it suggests the impossibility of withdrawing the impression produced). Finally, in his closing argument, trial counsel repeatedly urged the jury not to hold Zamora's previous offenses against him in determining his fate in this case. Clearly, the record contains numerous examples of trial counsel attempting to mitigate the effect such evidence would have on Zamora during the guilt-innocence phase.

Regardless, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

17

mistake or accident . . . ." *Id.* "The issue [of permitting the introduction of extraneous offense evidence] does not necessarily turn on the type of defense presented, but on whether the extraneous offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact." *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

We note that the evidence pertaining to Zamora's prior assaults of his wife was admitted because Zamora took the stand and "opened the door." In his testimony, Zamora repeatedly expressed that he was fearful for his family's safety when Jesus followed him and when Adam appeared to possess a firearm that turned out to be a cordless telephone. Zamora also expressed that he could not immediately take the dog to a veterinarian's office because he was fearful that Jesus would return and harm his family. On cross-examination, the State questioned Zamora regarding his relationship with his wife and his overall temperament. Zamora's trial counsel objected, and a bench conference occurred. The trial court overruled trial counsel's objection, and the State proceeded with this line of questioning. The State's line of questioning was used to rebut Zamora's defensive theory that he was a family man, was fearful for his family, and could not have intentionally, knowingly, or recklessly abused his dog. Moreover, Texas Rule of Evidence 609(a) allows for the credibility of a witness to be attacked by evidence that the witness has been convicted of a felony or a crime of moral turpitude, so long as ten years have not elapsed since the date of the conviction. *See* TEX. R. EVID. 609(a). Here, Zamora was convicted of assaulting his wife in 2003. Because misdemeanor assault of a spouse is a crime of moral turpitude and because less than

18

ten years have elapsed since the conviction, such evidence was admissible and counsel was not required to object to the introduction of this evidence. *See id.*; *Trippell v. State*, 535 S.W.2d 178, 180 (Tex. Crim. App. 1976); *Jackson v. State*, 50 S.W.3d 579, 592 (Tex. App.–Fort Worth 2001, pet. ref'd) (holding that a misdemeanor assault of a female is a crime of moral turpitude); *Hardeman v. State*, 868 S.W.2d 404, 405 (Tex. App.–Austin 1993, pet. dism'd); *see also Ortiz*, 93 S.W.3d at 93.

Regarding Zamora's complaints about the State's introduction of evidence of his incarceration in the Texas Youth Commission system, the record indicates that trial counsel did not object to this evidence. However, the record is silent as to trial counsel's strategy for not objecting to this evidence. It is possible that trial counsel did not wish to draw further attention to Zamora's prior bad acts by lodging another objection, and it is also possible that trial counsel did not object to this evidence as part of a calculated trial strategy of honesty and openness before the jury. *See Hathorn v. State*, 848 S.W.2d 101, 120 (Tex. Crim. App. 1992); *see also Ortiz*, 93 S.W.3d at 88-89 ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). Regardless, because the record is silent as to trial counsel's motivations, we cannot say that Zamora has overcome the strong presumption of reasonable assistance. *See Strickland*, 466 U.S. at 684; *see also Thompson*, 9 S.W.3d at 813; *Cannon*, 668 S.W.2d at 403; *Jaynes*, 216 S.W.3d at 851. Based on the foregoing, we overrule Zamora's second issue.

IV.   MODIFICATION OF THE TRIAL COURT'S JUDGMENT

The trial court's judgment mistakenly refers to section 42.09 of the penal code, a section of the penal code addressing cruelty to livestock animals, instead of section 42.092, the statute pertaining to the charged offense of cruelty to non-livestock animals, in its judgment. *See* TEX. PENAL CODE ANN. §§ 42.09, 42.092. The trial court's judgment specifically notes that Zamora was convicted "of the offense of **CRUELTY TO NON-LIVESTOCK ANIMALS**" but references the wrong statutory provision applicable to this case. (Emphasis in original.) Because we have the necessary data and evidence for reformation, we modify the trial court's judgment to reflect the correct statute for the offense—Texas Penal Code section 42.092. *See id.* § 42.092; *see also* TEX. R. APP. P. 43.2; *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

## V.    CONCLUSION

Having overruled both of Zamora's issues on appeal, we affirm the trial court's judgment as modified.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
30th day of December, 2010.

20