NUMBER 13-10-00146-CR

                   

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

HERIBERTO LOZANO ZAMORA JR.,                                       Appellant,

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 206th District Court

of Hidalgo County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides

Memorandum Opinion by
Chief Justice Valdez

 

            Appellant, Heriberto
Lozano Zamora Jr., was charged by indictment with one count of cruelty to
non-livestock animals, a state-jail felony.  See Tex. Penal Code Ann. § 42.092(b)(1), (c) (Vernon Supp.
2010).  After a jury trial, Zamora was convicted of the underlying offense, and
the jury assessed punishment at six months’ incarceration in the State-Jail
Division of the Texas Department of Criminal Justice with a $2,500 fine.  By
two issues, Zamora argues that:  (1) the evidence supporting his conviction is
legally and factually insufficient; and (2) he received ineffective assistance
of counsel.  We affirm as modified.

I.             
Background

On the afternoon of July 20, 2008,
Rosana Elizondo and her brother, Jesus Elizondo, were talking on the front
porch of Rosana’s house, which is located in Weslaco, Texas.  Rosana had just
finished entertaining guests for her son’s first birthday party.  While
talking, Rosana and Jesus heard the sound of an all-terrain vehicle (“ATV”)
approaching the house.  Rosana looked up and saw Zamora driving the ATV at a
very fast speed down the street.  She estimated that Zamora must have been
travelling at twenty-five or thirty miles per hour.  She also noticed that
Zamora was using the ATV to pull a dog on a short leash and that the dog was struggling
to keep up.[1] 
Rosana stated that the dog was “running as fast as he could alongside [the
ATV.]”  She watched Zamora drive by until the ATV turned onto another street
and her view was obscured by houses.  Shortly thereafter, Zamora reappeared and
reached a stop sign at an intersection near Rosana’s house.  At this point, the
dog was no longer running; it was in a “squatting position” because it appeared
as if the dog could no longer walk.  Rosana then observed Zamora accelerate on
the ATV and drag the dog across the intersection.

            Jesus also observed Zamora
driving the ATV while pulling a dog with a leash attached to the dog’s neck
collar.[2] 
Jesus recalled seeing Zamora looking back at the dog and laughing and smiling
as the dog dragged limply behind the ATV.  In fact, Jesus saw the dog stumble
as it tried to keep up with the ATV.  The dog eventually lost its footing and
slid on its right side along the asphalt pavement as Zamora continued to drive
the ATV.  Jesus remembered seeing the dog bounce several times off the pavement
as it was being dragged by Zamora.

            After witnessing the dog
being dragged, Rosana requested that her husband, Adam Villarreal, come
outside.  When he got outside, Adam saw that the ATV was stationary at an
intersection and that the dog and the dog’s lease were attached to the ATV and
the dog was seated on the pavement.  Adam observed Zamora drive the ATV forward
while dragging the dog behind, even though, at this point, the dog was “sitting
down.”  Jesus then got into his car and attempted to intercept the ATV.  Jesus
stopped at another intersection and positioned his car so that Zamora could not
proceed.  Jesus told Zamora that he needed to pick up his dog because the dog
was shaking uncontrollably and appeared to be unable to stand.  Zamora got off
of the ATV and began yelling at Jesus.  Rosana overheard the argument between
Zamora and Jesus and recalled that Zamora told Jesus that “I [Zamora] bought
the dog, it’s my dog, I can do whatever the fuck I want with him.”  Jesus signaled
for Adam to call the police, so Adam went inside the house to get the family’s
cordless telephone and called the police.  At this point, Zamora picked up the
dog, which was extremely bloody, got back onto the ATV, and drove back to his
house.  Jesus followed Zamora to get more information about Zamora’s address to
convey to police.

            Zamora observed Jesus
following him and interpreted Jesus’s actions as threatening to Zamora’s
family.[3] 
Jesus then returned to Rosana’s house where he, Rosana, and Adam waited for
police to arrive.  However, prior to the arrival of police, Zamora walked
towards Rosana’s house yelling, “you don’t tell me what to do,” and other
statements.  In response to Zamora’s menacing behavior, Adam made a second call
to police.  When the police arrived, Zamora was escorted back to his house.

            David Garcia, a police
officer with the Weslaco Police Department at the time of the incident, and
Juan Samuel Hernandez, a lieutenant with the Weslaco Police Department,
responded to the scene of the incident.  Officer Garcia escorted Zamora back to
his residence.  While at Zamora’s residence, Officer Garcia observed a large
amount of blood on Zamora’s clothing and on the ATV.  Officer Garcia found the
dog lying on the ground in Zamora’s backyard.  The dog appeared to have been
recently sprayed with a water hose.  Nevertheless, the dog was shaking and
trembling uncontrollably.  Officer Garcia testified that Zamora stated that he
was merely walking his dog around the block and “that he was pulling it with
the ATV but that he was not going fast.”  Officer Garcia stated that the dog
was a six-month-old Golden Retriever that had “scrapes on the top of his head,
he had cuts and scrapes on his stomach, on the bottom of his stomach, he had
scrapes and cuts on all four paws” that were fresh and bleeding.[4] 
Officer Garcia noted that the dog appeared to be in pain.  Officer Garcia
subsequently arrested Zamora and called the local Animal Control.  Lieutenant
Hernandez testified that he also observed blood on Zamora’s pants and the ATV. 
Zamora admitted to Lieutenant Hernandez that “the dog got tired and he [Zamora]
started dragging him.  He thought it was only for a little distance.” 
Lieutenant Hernandez echoed Officer Garcia’s testimony regarding the injuries
to the dog and that the dog “was kind of shaking like he was hurt.”

            Thereafter, Animal Control
arrived and transported the dog to the Palm Valley Animal Center (the
“Center”).  Mary Garza, the health care manager at the Center, observed that
the dog had numerous cuts and lacerations on its paws, head, and chest.  She
recalled that there was a whole lot of blood involved and that the dog “was
suffering.”  Garza noted that the Center does not have medications to treat
animals, nor does it employ a veterinarian; thus, animals brought to the Center
typically do not receive any treatment for their injuries.  In addition,
animals are not allowed to leave the premises of the Center until the Center
receives permission from the city or municipality.  As a result of this policy,
Zamora’s dog did not receive any medication or treatment for his injuries. 
About two weeks after he arrived at the Center, the dog began to get sick from
infections, and Garza sought a release from the city to proceed with
euthanasia.  However, the process was delayed, and the dog ultimately died on
his own a month-and-a-half after he arrived at the Center.  

            Zamora was charged by
indictment with the state-jail-felony offense of cruelty to non-livestock
animals.  See id.  At the conclusion of the State’s case-in-chief,
Zamora moved for a directed verdict, which the trial court denied.  Thereafter,
the jury convicted Zamora of the underlying offense and sentenced him to six
months’ incarceration in the State-Jail Division of the Texas Department of
Criminal Justice.  This appeal ensued.  

II.           
Sufficiency of the Evidence

By his first issue, Zamora asserts
that the evidence supporting his conviction is legally and factually
insufficient.  Specifically, he claims that the evidence is insufficient because
the State’s witnesses allegedly offered conflicting testimony as to whether the
dog was running alongside the ATV or was being dragged by the ATV.  Zamora also
argues that the evidence is insufficient because the State did not present
evidence from a veterinarian to explain the extent of the dog’s injuries.  We
disagree.

A.  
Standard of
Review

The court of criminal
appeals has recently held that there is “no meaningful distinction between the Jackson
v. Virginia legal sufficiency standard and the Clewis factual-sufficiency
standard” and that the Jackson standard “is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”  Brooks v. State, No. PD-0210-09, 2010
Tex. Crim. App. LEXIS 1240, at **25-26, *57 (Tex. Crim. App. Oct. 6, 2010)
(plurality opinion).  Accordingly, we review Zamora’s claims of evidentiary sufficiency
under “a rigorous and proper application” of the Jackson standard of
review.  Id. at *37, *57.

Under the Jackson
standard, “the relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); see Brooks, 2010 Tex. Crim.
App. LEXIS 1240, at *14 (characterizing the Jackson standard as: 
“Considering all of the evidence in the light most favorable to the verdict,
was a jury rationally justified in finding guilt beyond a reasonable doubt”). 
“[T]he fact[-]finder’s role as weigher of the evidence is preserved through a
legal conclusion that upon judicial review all of the evidence is to be
considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The
jury, in all cases is the exclusive judge of facts proved and the weight to be
given to the testimony . . . .”); Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

Sufficiency of the
evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.–Corpus Christi 2002, pet. ref’d).  Under a hypothetically correct jury
charge, the State was required to prove beyond a reasonable doubt that Zamora
(1) intentionally, knowingly, or recklessly (2) “torture[d] an animal or in a
cruel manner kill[ed] or cause[d] serious bodily injury to an animal.”[5] 
Tex. Penal Code Ann. §
42.092(b)(1).  “A person acts intentionally, or with intent, with respect to
the nature of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result.”  Id.
§ 6.03(a) (Vernon 2003).  “A person acts knowingly with respect to a result of
his conduct when he is aware that his conduct is reasonably certain to cause
the result.”  Id. § 6.03(b).  Further, “[a] person acts recklessly . . .
with respect to circumstances surrounding his conduct or the result of his
conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur.”  Id.
§ 6.03(c).  Intent may “be inferred from circumstantial evidence[,] such as
acts, words, and the conduct of the appellant.”  Guevara v. State, 152
S.W.3d 45, 50 (Tex. Crim. App. 2004); see Hart v. State, 89 S.W.3d 61, 64
(Tex. Crim. App. 2002) (stating that a fact-finder may infer both knowledge and
intent from the defendant’s acts, words, or conduct and from the nature of the
wounds inflicted on the victim); Hernandez v. State, 819 S.W.2d 806, 810
(Tex. Crim. App. 1991); Ledesma v. State, 677 S.W.2d 529, 531 (Tex.
Crim. App. 1984) (noting that the requisite culpable mental state may be
inferred from the surrounding circumstances).

The State is not
required to present direct evidence to establish guilt.  See Guevara,
152 S.W.3d at 49.  “Circumstantial evidence is as probative as direct evidence
in establishing the guilt of the actor, and circumstantial evidence alone can
be sufficient to establish guilt.”  Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007); see Guevara, 152 S.W.3d at 49.  The law does not
require that each fact “point directly and independently to the guilt of the
appellant, as long as the cumulative effect of all the incriminating facts is
sufficient to support the conviction.”  Hooper, 214 S.W.3d at 13; see
Guevara, 152 S.W.3d at 49.

A.   Discussion

On appeal, Zamora
argues that the evidence supporting his conviction is insufficient because the
State’s witnesses “couldn’t be sure if the dog was dragged or if it was running
next to Appellant while he was in [sic] the ATV.”  Several witnesses testified
to seeing Zamora drag his six-month old Golden Retriever behind an ATV. 
Witnesses also testified that Zamora was travelling on the ATV at a high rate
of speed while dragging the dog.  In particular, Rosana testified that she saw
the dog running alongside the ATV initially, but after Zamora accelerated the
ATV to twenty-five or thirty miles per hour, the dog had trouble keeping up. 
She noted that the dog “was running for his life” as he tried to keep up with
Zamora’s ATV.  Jesus stated that once Zamora accelerated the ATV to a high
speed, the dog began to stumble and was dragged along the pavement on the dog’s
right side.  While dragging the dog, Jesus observed Zamora looking back at the
dog and laughing and smiling, as if Zamora was enjoying the fact that the dog
was suffering.  Based on our review of the trial testimony, we cannot say that
the witnesses offered conflicting accounts of the incident so as to render the
evidence supporting Zamora’s conviction insufficient.  Nevertheless, to the
extent that the witnesses’ recollections of the incident conflict, the weighing
of the supposedly conflicting evidence was within the province of the jury to
resolve.  See Jackson, 443 U.S. at 326 (noting that a “court faced with
a record of historical facts that supports conflicting inferences must
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflicts in favor of the prosecution, and must defer
to that resolution”); Wesbrook, 29 S.W.3d at 111; see also Brooks,
2010 Tex. Crim. App. LEXIS 1240, at *16 n.13.  Clearly, by convicting Zamora of
the offense, the jury believed the witnesses’ testimony regarding what happened
to the dog on the afternoon of July 20, 2008.  Furthermore, the jury’s
resolution of the facts corresponds with Officer Garcia and Lieutenant
Hernandez’s testimony that Zamora admitted to them that he dragged the dog
while riding the ATV when the dog became tired and the testimony of Adam,
Rosana, and Jesus, who each stated that they observed Zamora dragging the dog
behind his ATV.

Zamora also argues
that the evidence is insufficient because the State did not present any
“evidence from a veterinarian to explain to the jury how severe the injuries
were.”  In making this argument, Zamora does not cite any relevant authority
requiring the State to present such evidence.  Regardless, section 42.092 of
the penal code required the State to prove that Zamora killed, tortured, or
caused serious bodily injury to the dog by inflicting unjustifiable or
unwarranted pain or suffering.  See Tex.
Penal Code Ann. § 42.092.  The record contains numerous pictures of the
dog’s horrific injuries, documenting each of the cuts and lacerations on the
dog and showing the 253-foot blood trail left by the dog as he was being
dragged behind the ATV.  Furthermore, Officer Garcia and Lieutenant Hernandez
testified that there was a significant amount of blood on Zamora’s clothing and
on the ATV that was from the dog.  Officer Garcia noted that the dog had fresh
cuts and scrapes on its head, paws, and stomach; that the dog was shaking and
trembling uncontrollably; that the dog appeared to be in pain; and that Zamora
had attempted to wash the blood off of the dog prior to the arrival of police. 
See Guevara, 152 S.W.3d at 50 (stating that attempts to conceal
incriminating evidence are circumstances of guilt).  Garza, the health care
manager at the Center, testified that Zamora’s dog was brought to the center
with cuts and lacerations to his paws, chest, and front part of his head and
that these injuries were consistent with being dragged.  Garza further
testified that the dog was suffering and appeared to be in a lot of pain.  The
dog’s pain and suffering was so significant that Garza submitted a request to
the city to quickly euthanize the dog in an attempt to end his misery. 
Testimony from a veterinarian would have been cumulative of the photographs and
testimony which demonstrated the extent and seriousness of the dog’s injuries. 
Based on the cumulative force of all the incriminating circumstances, the jury
could have reasonably inferred that Zamora’s dog sustained significant injuries
as a result of being dragged behind Zamora’s ATV without the aid of a
veterinarian’s testimony.  See Hooper, 214 S.W.3d at 13, 16-17 (stating
that “[j]uries are permitted to make reasonable inferences from the evidence
presented at trial”; and that “juries are not permitted to come to conclusions
based on mere speculation or factually unsupported inferences or
presumptions”).  

Viewing all of the
evidence in the light most favorable to the prosecution, we conclude that a
rational fact-finder could have found beyond a reasonable doubt that Zamora was
guilty of the underlying offense of cruelty to a non-livestock animal.  See
Jackson, 443 U.S. at 319; Brooks, 2010 Tex. Crim. App. LEXIS 1240,
at *14; see also Tex. Penal Code
Ann. § 42.092.  Accordingly, we overrule Zamora’s first issue.     

III.          
Ineffective Assistance of Counsel

By his second issue, Zamora contends
that his trial counsel provided ineffective assistance of counsel because he
failed to object to allegedly inadmissible hearsay evidence and evidence of
extraneous offenses and bad acts introduced by the State, including prior
incidents where Zamora assaulted his wife and got into a fight that resulted in
his incarceration in the Texas Youth Commission system. 

A.  
Standard of
Review

To establish ineffective assistance of
counsel, Zamora must show:  (1) his attorney’s representation fell below an
objective standard of reasonableness; and (2) there is a reasonable probability
that, but for his attorney’s errors, the result of the proceeding would have
been different.  See Strickland v. Washington, 466 U.S. 668, 684 (1984);
Dewberry v. State, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999) (holding
that appellant must show a reasonable probability that, but for counsel’s
errors, the fact-finder would have had a reasonable doubt as to appellant’s
guilt); Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi
2006, no pet.).  Whether this test has been met is to be judged on appeal by
the totality of representation, not by any isolated acts or omissions.  Jaynes,
216 S.W.3d at 851.  Zamora has the burden of proving ineffective assistance of
counsel by a preponderance of the evidence.  Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999) (citing Cannon v. State, 668 S.W.2d 401,
403 (Tex. Crim. App. 1984)).

Our review of counsel’s representation
is highly deferential, and we will find ineffective assistance only if Zamora
overcomes the strong presumption that his counsel’s conduct fell within the
range of reasonable professional assistance.  See Strickland, 466 U.S.
at 689; Jaynes, 216 S.W.3d at 851.  The right to “reasonably effective
assistance of counsel” does not guarantee errorless counsel or counsel whose
competency is judged by perfect hindsight.  Saylor v. State, 660 S.W.2d
822, 824 (Tex. Crim. App. 1983).  Moreover, the acts or omissions that form the
basis of Zamora’s claims of ineffective assistance must be supported by the
record.  Thompson, 9 S.W.3d at 814; Jaynes, 216 S.W.3d at 851.  A
silent record which provides no explanation for counsel’s actions usually will
not overcome the strong presumption of reasonable assistance.  Thompson,
9 S.W.3d at 813-14.  To warrant reversal without affording counsel an
opportunity to explain his actions, “the challenged conduct must be ‘so
outrageous that no competent attorney would have engaged in it.’”  Roberts
v. State, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

B.  
Alleged
Hearsay Statements

On appeal, Zamora complains about the
admission of testimony from police that “someone was dragging a dog.”  Zamora
also complains about testimony that he told police officers that “he could do
whatever he wanted to do to the dog because it was his property.”  Zamora
argues that such testimony was hearsay and prejudicial to his case; it should
have been excluded from his trial; and trial counsel’s failure to object
amounted to ineffective assistance.  We first note that Zamora did not file a
motion for new trial or any other post-judgment motion arguing ineffective
assistance of counsel; thus, the record does not contain an explanation from
Zamora’s trial counsel as to his trial strategy.  As mentioned above, a silent
record regarding trial counsel’s actions will usually not overcome the strong
presumption of reasonable assistance, unless trial counsel’s actions are so
outrageous that no competent attorney would have engaged in such actions.  See
Thompson, 9 S.W.3d at 813-14; see also Roberts, 220 S.W.3d at 533; Goodspeed,
187 S.W.3d at 392.  For the reasons outlined below, we cannot say that trial
counsel’s failure to object to the statements Zamora characterizes as hearsay
was so outrageous as to amount to ineffective assistance of counsel.

Hearsay is a statement, other than one
made by the declarant while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  Hearsay is generally not admissible.  Id.
at R. 802.  A “matter asserted” includes any matter explicitly asserted, and
any matter implied by a statement, if the probative value of the statement
flows from the declarant’s belief as to the matter.  Id. at R. 801(c). 
When information is offered for a reason other than to prove the truth of the
matter asserted, the evidence may be admissible.  Martinez v. State, 22
S.W.3d 504, 508 (Tex. Crim. App. 2000); see Lopez v. State, 200 S.W.3d 246,
254 (Tex. App.–Houston [14th Dist.] 2006, pet. ref’d).  Further, a statement is
not hearsay if it is offered against a party and it is the party’s own statement
in either an individual or representative capacity.  See Tex. R. Evid. 801(e)(2)(A); see also
Rodela v. State, 829 S.W.2d 845, 847-50 (Tex. App.–Houston [1st Dist.]
1992, pet. ref’d).

Officer Garcia testified that “people
were calling the police department that [sic] he [Zamora] was dragging a dog.” 
Lieutenant Hernandez stated that eyewitnesses “had seen this guy [Zamora]
dragging a dog on—with an ATV.”  This testimony amounts to an explanation from
the police as to how Zamora became a suspect in this case, and the questions
prompting these responses were not designed to elicit hearsay testimony.  See
Osbourn v. State, 92 S.W.3d 531, 536-37 (Tex. Crim. App. 2002) (noting that
the testimony of a police officer based on his experience is admissible as a
lay opinion); Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.
1995); see also Lee v. State, 29 S.W.3d 570, 577 (Tex.
App.–Dallas 2000, no pet.) (“Police officers may testify to explain how the
investigation began and how the defendant became a suspect.”).  Therefore, this
testimony was admissible.  See Osbourn, 92 S.W.3d at 536-37; Dinkins,
894 S.W.2d at 347; see also Lee, 29 S.W.3d at 577.  In addition,
Officer Garcia and Lieutenant Hernandez’s testimony regarding Zamora’s dragging
of the dog was cumulative of testimony given by Rosana, Adam, and Jesus, each
of whom testified that they witnessed Zamora dragging the dog.  Therefore, any
harm associated with the admission of Officer Garcia and Lieutenant Hernandez’s
testimony would be harmless given that it was cumulative of other evidence
admitted at trial without objection.  See Matz v. State, 21 S.W.3d 911,
912 (Tex. Crim. App. 2000) (stating that if other properly admitted evidence
proves the same facts, any error is harmless); Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999) (same); see also Darby v. State,
922 S.W.2d 614, 623-24 (Tex. App.–Fort Worth 1996, pet. ref’d) (holding that a
failure to object to cumulative evidence is harmless and will not support a
claim of ineffective assistance of counsel).  Further, and perhaps most
importantly, Officer Garcia and Lieutenant Hernandez’s testimony regarding
Zamora’s dragging of the dog would constitute an exception to the hearsay
rule—an admission of a party opponent—because Zamora previously admitted to
police that he had dragged the dog but only for a short distance.  See Tex. R. Evid. 801(e)(2)(A); see also
Cunningham v. State, 846 S.W.2d 147, 151 (Tex. App.–Austin 1993), aff’d,
877 S.W.2d 310 (Tex. Crim. App. 1994) (holding that testimony regarding
appellant’s out-of-court statements is admissible as an admission of a party
opponent); Rodela, 829 S.W.2d at 847-50.

Zamora also complains that Lieutenant
Hernandez’s testimony that he heard Zamora tell Rosana, Adam, and Jesus that
“it’s none of your business” was inadmissible hearsay to which trial counsel
should have objected.  Once again, this testimony was cumulative of other
testimony admitted at trial without objection.  In particular, Rosana testified
that she heard Zamora exclaim that “I bought the dog, it’s my dog, I can do
whatever the fuck I want with him.”  She also overheard Zamora state that
“nobody tells him what to do.”  Jesus noted that Zamora encouraged him to call
the police because Zamora believed that the police would say that the dog “was
his property, he could do whatever he wanted to it.”  Because this
complained-of testimony is cumulative of other evidence in the record, we
cannot say that trial counsel was deficient in failing to object.  See Matz,
21 S.W.3d at 912; Brooks, 990 S.W.2d at 287; see also Darby, 922
S.W.2d at 623-24.  Moreover, we note, once again, that Lieutenant Hernandez
explained in his testimony how Zamora became a suspect in this case, and he
described his own perception of the crime scene while he was there.  See
Osbourn, 92 S.W.3d at 536-37; Dinkins, 894 S.W.2d at 347; see
also Lee, 29 S.W.3d at 577.     

Because the record is silent as to
trial counsel’s trial strategies and because the statements made by Officer
Garcia and Lieutenant Hernandez are either cumulative of other evidence, fall
into a hearsay exception, or explain how Zamora became a suspect in this case,
we conclude that the testimony was admissible at trial, see Ortiz v. State,
93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (“When an ineffective assistance claim
alleges that counsel was deficient in failing to object to the admission of
evidence, the defendant must show, as part of his claim, that the evidence was
inadmissible.”); thus, we cannot say that Zamora has met his burden in proving
that trial counsel’s failure to object to these statements amounted to
ineffective assistance of counsel.  See Strickland, 466 U.S. at
684; see also Thompson, 9 S.W.3d at 813; Cannon, 668
S.W.2d at 403; Jaynes, 216 S.W.3d at 851.

C.   Zamora’s Prior Bad Acts

Zamora also argues that his trial
counsel was ineffective because he should have objected to the admission of testimony
regarding Zamora’s prior assaults of his wife and a prior fight that resulted
in his incarceration in the Texas Youth Commission system.  First, we note that
Zamora is incorrect in stating that trial counsel did not object to the
admission of the evidence pertaining to the prior assaults of his wife.  In
fact, trial counsel lodged a rule 404(b) objection and objected that the State
had not provided him with notice of its intent to use such evidence.  Trial
counsel later abandoned his notice objection.  Nevertheless, trial counsel
filed a motion in limine to prevent such evidence from being introduced at
trial.  Also, the jury charge included an instruction prohibiting the jury from
considering extraneous-offense evidence as substantive evidence of Zamora’s
guilt in this case and only permitted the jury to consider this evidence for
the purpose of weighing Zamora’s credibility.  See Thrift v. State, 176
S.W.3d 221, 224 (Tex. Crim. App. 2005) (“On appeal, we generally presume the
jury follows the trial court’s instructions in the manner presented.”); see
also Cordova v. State, 296 S.W.3d 302, 312 (Tex. App.–Amarillo 2009, pet.
ref’d) (holding that testimony referring to extraneous offenses can be rendered
harmless by an instruction to disregard such testimony, unless it is so clearly
calculated to inflame the minds of the jury and is of such a nature that it
suggests the impossibility of withdrawing the impression produced).  Finally,
in his closing argument, trial counsel repeatedly urged the jury not to hold Zamora’s
previous offenses against him in determining his fate in this case.  Clearly,
the record contains numerous examples of trial counsel attempting to mitigate
the effect such evidence would have on Zamora during the guilt-innocence phase.

Regardless, “evidence of other crimes,
wrongs, or acts is not admissible to prove the character of a person in order
to show action in conformity therewith.”  Tex.
R. Evid. 404(b).  However, such evidence “may . . . be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident . . . .”  Id. 
“The issue [of permitting the introduction of extraneous offense evidence] does
not necessarily turn on the type of defense presented, but on whether the
extraneous offense evidence has noncharacter-conformity relevance by, for
example, rebutting a defensive theory or making less probable defensive
evidence that undermines an elemental fact.”  Bass v. State, 270 S.W.3d
557, 563 (Tex. Crim. App. 2008). 

We note that the evidence pertaining
to Zamora’s prior assaults of his wife was admitted because Zamora took the
stand and “opened the door.”  In his testimony, Zamora repeatedly expressed
that he was fearful for his family’s safety when Jesus followed him and when
Adam appeared to possess a firearm that turned out to be a cordless telephone. 
Zamora also expressed that he could not immediately take the dog to a
veterinarian’s office because he was fearful that Jesus would return and harm
his family.  On cross-examination, the State questioned Zamora regarding his
relationship with his wife and his overall temperament.  Zamora’s trial counsel
objected, and a bench conference occurred.  The trial court overruled trial
counsel’s objection, and the State proceeded with this line of questioning. 
The State’s line of questioning was used to rebut Zamora’s defensive theory
that he was a family man, was fearful for his family, and could not have
intentionally, knowingly, or recklessly abused his dog.  Moreover, Texas Rule
of Evidence 609(a) allows for the credibility of a witness to be attacked by
evidence that the witness has been convicted of a felony or a crime of moral
turpitude, so long as ten years have not elapsed since the date of the conviction. 
See Tex. R. Evid. 609(a). 
Here, Zamora was convicted of assaulting his wife in 2003.  Because misdemeanor
assault of a spouse is a crime of moral turpitude and because less than ten
years have elapsed since the conviction, such evidence was admissible and
counsel was not required to object to the introduction of this evidence.  See
id.; Trippell v. State, 535 S.W.2d 178, 180 (Tex. Crim. App. 1976); Jackson
v. State, 50 S.W.3d 579, 592 (Tex. App.–Fort Worth 2001, pet. ref’d)
(holding that a misdemeanor assault of a female is a crime of moral turpitude);
Hardeman v. State, 868 S.W.2d 404, 405 (Tex. App.–Austin 1993, pet.
dism’d); see also Ortiz, 93 S.W.3d at 93.  

Regarding Zamora’s complaints about
the State’s introduction of evidence of his incarceration in the Texas Youth
Commission system, the record indicates that trial counsel did not object to
this evidence.  However, the record is silent as to trial counsel’s strategy
for not objecting to this evidence.  It is possible that trial counsel did not
wish to draw further attention to Zamora’s prior bad acts by lodging another
objection, and it is also possible that trial counsel did not object to this
evidence as part of a calculated trial strategy of honesty and openness before
the jury.  See Hathorn v. State, 848 S.W.2d 101, 120 (Tex. Crim. App.
1992); see also Ortiz, 93 S.W.3d at 88-89 (“If counsel’s reasons for his
conduct do not appear in the record and there is at least the possibility that
the conduct could have been legitimate trial strategy, we will defer to
counsel’s decisions and deny relief on an ineffective assistance claim on
direct appeal.”).  Regardless, because the record is silent as to trial
counsel’s motivations, we cannot say that Zamora has overcome the strong
presumption of reasonable assistance.  See Strickland, 466 U.S.
at 684; see also Thompson, 9 S.W.3d at 813; Cannon, 668
S.W.2d at 403; Jaynes, 216 S.W.3d at 851.  Based on the foregoing, we
overrule Zamora’s second issue.

IV.         
Modification of the Trial Court’s Judgment

The trial court’s judgment mistakenly
refers to section 42.09 of the penal code, a section of the penal code
addressing cruelty to livestock animals, instead of section 42.092, the statute
pertaining to the charged offense of cruelty to non-livestock animals, in its
judgment.  See Tex. Penal Code
Ann. §§ 42.09, 42.092.  The trial court’s judgment specifically notes
that Zamora was convicted “of the offense of CRUELTY TO NON-LIVESTOCK
ANIMALS” but references the wrong statutory provision applicable to this
case.  (Emphasis in original.)  Because we have the necessary data and evidence
for reformation, we modify the trial court’s judgment to reflect the correct
statute for the offense—Texas Penal Code section 42.092.  See id. § 42.092;
see also Tex. R. App. P.
43.2; Bigley v. State, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). 

V.          
Conclusion

Having overruled both of Zamora’s
issues on appeal, we affirm the trial court’s judgment as modified.

 

________________________

ROGELIO VALDEZ

Chief Justice

 

Do
not Publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

30th
day of December, 2010.









[1]
Rosana noted that the leash Zamora used to pull the dog with the ATV was so
short that “the dog’s head was titled upward towards the ATV.”

 





[2]
Zamora testified that he was merely walking the dog using a fifteen-foot
retractable leash while driving the ATV.  Zamora noted that he had done this
before and that the dog loved chasing the ATV.





[3]
At trial, Zamora specifically testified that he was fearful for his family’s
safety when he observed Jesus following him; Zamora also testified that Jesus
was yelling at him in a threatening manner and that Adam or Jesus had a gun,
though later testimony indicated that neither had a gun and that the object
that Zamora described was a telephone.  After hearing this testimony, the State
questioned Zamora about several prior bad acts that he had committed, including
an arrest in 2009, for assaulting his wife, which resulted in a protective
order being issued; another assault charge perpetrated against his wife in
2003, to which Zamora pleaded guilty; and a 1998 conviction for assault, which
resulted in Zamora serving time in the Texas Youth Commission system.  Zamora’s
counsel objected to the introduction of this evidence, asserting that the prior
bad act evidence was irrelevant and that State had not provided Zamora with adequate
notice of its intent to use such evidence.  The State responded that Zamora had
“opened the door” to the admission of such evidence by testifying that he was
concerned for his family’s safety.  After a discussion before the bench, Zamora
admitted that the State had properly noticed him of its intent to use such
evidence and requested that the jury charge include a limiting instruction
about the evidence, which the trial court stated would be considered at the
charge conference. 





[4]
Several pictures documenting the dog’s horrific injuries were admitted into
evidence.  Among the evidence admitted were pictures of the blood trail left by
the dog on the pavement as it was being dragged.  Officer Garcia testified that
the length of the blood trail was approximately 253 feet but that the blood
trail does not necessarily indicate “how long the dog was being dragged.”





[5]
Section 42.092 of the penal code defines an “animal” as “a domesticated living
creature, including any stray or feral cat or dog . . . .”  Tex. Penal Code Ann. § 42.092(a)(2)
(Vernon Supp. 2010).  Further, “a cruel manner” encompasses an act “that causes
or permits unjustified or unwarranted pain or suffering.”  Id. § at
42.092(a)(3).  The torture of an animal is defined as “any act that causes unjustifiable
pain or suffering.”  Id. § at 42.092(a)(8).